1807.

Grant
vs
Ridsdale

*ford*, 2 *P. Wms.* 426. 2 *Eq. Ca. Ab.* 245. *Bunb.* 178. *Kent vs. Brigman, Pre. in Chan.* 233. *Ambler vs. Wyld*, 2 *Wash. Rep:* 36. *M'Rae vs. Woods*, Ibid 80. *Cochran vs. Street*, 1 *Wash. Rep.* 79. 3 *Morg. Ess.* 90. 2 *Morg. Ess.* 16.

*Johnson*, (Attorney General,) for the Appellee, referred to *Gover vs. Christie & Jay*, (*ante* 67;) and *Garretson vs. Cole*, 1 *Harr. & Johns.* 370.

Chase, Ch. J. delivered the opinion of the court. The court are of opinion, that the facts set forth by the complainant in his bill of complaint, are not sufficient to warrant the court of chancery to interpose and grant the relief prayed by the complainant.

DECREE AFFIRMED.

---

December.

Grant *vs.* Ridsdale *et al.*

D G, in a letter of credit to R and B, in favour of H and G; used the following expressions: "I will guarantee their engagements, should you think it necessary, for any transaction they may have with your house"—*Held*, that the guaranty was an absolute one, and to continue until counter-manded by D G.

Where the judgment of the general court, after a general verdict in *assumpsit*, was reversed, because of a defective count in the declaration. *Procedendo* awarded where the court of appeals concurred with the court below in the opinion, expressed in the bill of exceptions, but reversed the judgment, because of a defective count in the declaration.

Appeal from the General Court. This was a special action of *assumpsit* upon a special *guarantee* for goods sold and delivered to *Hacket* and *Grant*, brought by the appellees, (the plaintiffs in the court below,) against the appellant. The declaration contained the following counts: 1. That the plaintiffs, on the 1st day of February 1799, at the special instance and request of the defendant, had before that time sold and delivered to *John Hacket* and *Alexander Grant* divers goods, wares and merchandizes, the defendant, in consideration of the same, afterw &c. assumed upon himself, and to the plaintiffs then a re faithfully promised, that he would well and truly p to them as much money as they reasonably deserved to have for the goods, wares and merchandizes, so sold and delivered to *J. H.* and *A. G.* And the plaintiffs aver, that they reasonably deserved to have for the goods, wares and merchandizes, so sold and delivered to *H.* and *G.* the sum of £2000 current money, whereof the defendant, afterwards, &c. had notice. 2. That the plaintiffs, on the, &c. had, (at the special instance and request of the defendant before that time, &c. made to the plaintiffs by the defendant,) sold and delivered to *J. H.* and *A. G.* divers other goods, wares and merchandizes; the defendant, afterwards, &c.

in consideration of the same, assumed upon himself, and to the plaintiffs then and there faithfully promised, that he would well and truly pay to them as much money as they reasonably deserved to have for the said goods, wares and merchandizes, in case *H.* and *G.* did not thereafter pay and satisfy the plaintiffs therefor. And the plaintiffs aver, that they reasonably deserved to have for the goods, wares and merchandizes, last mentioned, the sum of £2000 current money, to wit, &c. of which *H.* and *G.* and the defendant, afterwards, &c. had notice. And the plaintiffs further aver, that *H.* and *G.* although often afterwards, &c. thereto requested by the plaintiffs, have not paid in any manner, contented or satisfied, the said sum of money, or any part thereof, to the plaintiffs, but have wholly refused to pay the same to them, and still do refuse, and have become wholly unable to pay the same, and are bankrupts and insolvent, to wit, &c. Of all which the defendant afterwards, &c. had notice. 3. That *H.* and *G.* on, &c. were about to purchase and buy of the plaintiffs certain other goods, &c. to wit, &c. the defendant undertook, and to the plaintiffs did then and there faithfully promise, that he would well and truly pay to the plaintiffs as much current money as they deserve to have for the goods, &c. if the plaintiffs should sell and deliver the same to *H.* and *G.* and they should fail in making payment therefor. And the plaintiffs aver, that in consideration of the promise and undertaking of the defendant, in form aforesaid made, they did afterwards, &c. sell and deliver to *H.* and *G.* the said goods, &c. which said goods, &c. were at the time of the said sale and delivery thereof, to wit, &c. worth, and the plaintiffs deserved to have therefor, other sum of £2000 current money; of all which premises *H.* and *G.* and the defendant, afterwards, &c. had notice. And that the defendant, in consideration of the premises, afterwards, &c. assumed upon himself, and to the plaintiffs then and there faithfully promised that he would well and truly pay to them the said sum of £2000 current money, whenever he should afterwards be thereto requested. 4. That the plaintiffs, had on, &c. bargained and agreed to and with *H.* and *G.* for the purchase of certain other goods, &c. by them, *H.* and *G.* of the plaintiffs to be then and there made, for the price and sum of other £2000 current money; the defendant then and there, to wit, on, &c. assumed upon himself, and to the plaintiffs then

and there faithfully promised, that if they would deliver the said goods, &c. to *H.* and *G.* he the defendant would well and truly pay to the plaintiffs the said sum of £2000 current money, in case *H.* and *G.* should be unable to pay for the same, or refuse to pay therefor. And the plaintiffs aver, that they, in consideration of the premises, afterwards, &c. did sell and deliver to *H.* and *G.* the said goods, &c. for the sum of £2000 current money, of which the defendant then and there had notice. And the plaintiffs aver, that *H.* and *G.* although often afterwards thereto requested by the plaintiffs, to wit, on, &c. have hitherto wholly refused to pay the said sum of £2000 current money, and do still refuse, and are become bankrupt, insolvent, and unable to pay the sum of money last mentioned, or any part thereof; by reason whereof the defendant became liable to pay to the plaintiffs the sum of money last mentioned; and being so liable the defendant, in consideration thereof, afterwards, to wit, on, &c. upon himself assumed, and to the plaintiffs then and there faithfully promised to pay them the sum of money last mentioned, when afterwards he should be thereunto requested. Nevertheless, &c. The general issue was pleaded; and at the trial at May term 1803, the following facts were proved to the jury: That one of the Mr. *Beaumonts'* of the house of *Ridsdale & Beaumonts*, the plaintiffs, was, previous to the 6th of April 1795, in the *United States*, and among other places, in the city of *Baltimore*, where the defendant then resided, and where the house of *Hackett* and *Grant* was established, soliciting orders for merchandise from his house; that the defendant wrote the following letter, on the day on which it is dated, and sent the same by his son *Alexander*, who went to *England* with a view of establishing connexions in the commercial line there with the different manufacturers, and others.

"*Baltimore*, 6 April, 1795.

Messrs. *Ridsdale* and *Beaumont*, Gentlemen—By the recommendation of Mr. *Beaumont*, I take the liberty to address you by my son *Alexander*, who visits *England* with a view of establishing connexions in the commercial line there with the different manufacturers, and others. He is concerned with Mr. *John Hacket* of this place, under the firm of *Hacket* and *Grant*. For their plan, I refer to themselves; have, therefore, only to add, that I will guarantee their engagements, should you think it necessary,

for any transaction they may have with your house. I am, &c.

*Danl. Grant.*"

*Alexander Grant* was one of the house of *Hacket* and *Grant;* and he arrived in *England* some time before the 30th of July in the said year, and delivered the letter to the plaintiffs, who, by the directions of *A. Grant,* after his arrival in *England*, and while there, shipped on the 30th July in said year, to the house of *H.* & *G.* goods to the amount of £1560 0 10 sterling. Afterwards, and some time in the fall of the said year, *A. Grant* returned to *Baltimore*, and in consequence of orders sent by *H.* and *G.* and before *A. Grant* went a second time to *England,* the plaintiffs shipped goods to *H.* and *G.* to the amount of £1103 7 0 sterling, to wit, on the 18th of February 1796; and also that *A. Grant* went a second time to *England,* and arrived there some time before the 23d of June in the year last mentioned, on which day the plaintiffs, by the directions of *H.* and *G.* and while *A. Grant* was in *England,* shipped to *H.* and *G.* other goods to the amount of £689 9 8 sterling; and that the account which they produced contains a correct statement of the mercantile transactions between the plaintiffs and *H.* & *G.* and that the balance there stated, of £707 7 2, was justly due to the plaintiffs from *H.* and *G.* who on the 30th of April 1798, acknowledged the account to be correct, and signed the same. It was further proved, that *H.* & *G.* are insolvent. No evidence was given that the plaintiffs returned any answer to the defendant's letter, or that any other correspondence took place between the defendant and the plaintiffs, at any time before the 30th of April 1798. The plaintiffs further proved, that immediately after having liquidated the account with *H.* and *G.* they required payment of them, which *H.* and *G.* declined and refused, alleging, that they were unable to pay the same; of which application and refusal immediate notice was given to the defendant by the plaintiffs, and a demand of the debt was made by them of him, who requested time to consider thereon, and advise with counsel, and afterwards gave for answer, that he would not pay the debt. The plaintiffs further proved, that after various applications to *H.* and *G.* and to the defendant, they instituted a suit on the 6th of March 1799, in the general court for the western shore,

against *H.* and *G.* and at October term 1800, obtained judgment against them, and afterwards issued an execution against them; from which execution they were discharged by an order of the chancellor, under an insolvent law passed in 1800. The plaintiffs then applied to the court, that they would direct the jury, that upon the facts so proved and given in evidence, the defendant was answerable as the guarantee of *Hacket* and *Grant,* and that the plaintiffs were entitled to their verdict for the balance due.

CHASE, Ch. J. The court give the direction prayed for. The court are of opinion, that the goods were shipped upon the credit of the letter; and that the guarantee was to continue until countermanded by the defendant; that the goods were shipped upon the united credit of *Hacket* and *Grant,* and the defendant.

The defendant excepted to the opinion of the court, and the verdict and judgment being for the plaintiffs, the defendant appealed to this court.

The cause was argued at June term 1806, before TILGHMAN, BUCHANAN, NICHOLSON, and GANTT, J.

*Martin,* for the Appellant, contended. 1. That the letter wrote by the appellant to the appellees was not an absolute guarantee. 2. That if it was, it did not extend beyond the first shipment after the receipt of the letter. 3. That the *allegata* and *probata* did not agree. He referred, as to the *first point,* to *Butcher vs. Andrews,* 1 *Salk.* 23. *Marriott vs. Lister,* 2 *Wils.* 141. *Jones vs. Cooper,* 1 *Cowp.* 287. *Matson vs. Wharam,* 2 *T. R.* 80. On the *third point,* he insisted that the several counts in the declaration were defective; that the *first count* was similar to that in *Butcher vs. Andrews,* and *Marriott vs. Lister,* where the judgments were arrested. That in the *second count* stated a promise, in consideration of *having* sold goods to *H.* and *G.* and the evidence was, that the promise was made *before* the goods were sold. That in the *third count,* there was no averment that *H.* and *G.* did not pay for the goods; and, to the *fourth count,* that the evidence offered was different from that stated in that count; that it did not pursue the letter of guarantee, which should have been set out according to its date, and in the words there-

of; and that the facts, as they appeared in evidence, should be stated, as also ought the continuance of the guarantee. He referred to *Esp. Dig.* 140, and 2 *Went. Plead.* 555. That there was no averment in the declaration that *Rids-dale* and *Beaumont*, to whom the letter was addressed, and the plaintiffs, were the same persons.

*Harper*, for the Appellees, admitted that some of the objections to the declaration were well founded; and that if any one of the counts were defective, it would be fatal, if it was not cured by the verdict, which he insisted would aid the defects urged. That if there was one good count, the verdict being general, it was sufficient; and if the evidence supported any one good count, it was sufficient. That the *second count* was a good one, to which the evidence would apply. He also contended that the letter was an absolute continuing guarantee, until it should be countermanded.

*Martin*, in reply, insisted, that where the evidence was not stated, and any one of the counts in the declaration was defective, there was some reason to suppose there was evidence applicable to such defective count; but that if the evidence was set out, and there was any one count to which it did not apply, it was fatal.

*Curia adv. vult.*

THE COURT at this term concurred with the General Court in the opinion pronounced in the bill of exceptions, but *reversed* the judgment because of a defective count in the declaration.

JUDGMENT REVERSED, AND PROCEDENDO AWARDED.

---

DE SOBRY, *Ex'r. of* TERRIER DE LAISTRE, *vs.* TERRIER DE LAISTRE.

ERROR to the General Court. The defendant in error, *Lewis Augustine Terrier de Laistre*, brought an action of

Parol evidence admitted to prove the manner in which wills are made and prov d in *France*,

A co. y of a will executed in *Philadelphia* and transmitted to the Island of *Martinique* by the testator, certified by a notary public of that Island, and returned under a commission issued to take testimony, is sufficiently authenticated by having the certificate of the chief colonial officer as to the signature of the notary public; and which, with the testimony of the testamentary executor, returned under the commission, is sufficiently proved, and may be read in evidence as the will of the deceased.

As to the manner of striking commissioners and issuing commissions to a foreign country to take testimony