## FELLOWS and others *vs.* PRENTISS.

A letter in these words: " *I hereby agree to guaranty to you the payment of such an amount of goods, at a credit of one year, interest after six months, not exceeding $500, as you may credit to J. H. P.*" is not a continuing guaranty, but is exhausted by a single purchase to the amount mentioned.

Where the defendant, who was already liable to the plaintiffs as a guarantor for goods sold to P. wrote to them that P. desired a further credit, and that he was willing to continue his surety, and inquired whether upon payment of a part of the existing debt they would give further time for the balance, and would credit P. with a further amount of goods, and added that if the answer was favorable, P. would call on the plaintiffs, and if otherwise, the writer would arrange the existing indebtedness ; and P. purchased other goods of the plaintiffs, without any answer having been given to the defendant's letter ; *held* that the letter was only a proposition not binding without acceptance, and consequently that the defendant was not liable for the last mentioned purchase.

If a principal debtor give the creditor his note for the debt, payable *one day after date*, the surety is thereby discharged.

And it is not competent for the creditor to prove that the note was intended as a mere memorandum and was not to operate as an extension of the credit.

ON error from the supreme court. Fellows and the other plaintiffs in error sued Prentiss in the supreme court, and declared in assumpsit, to which the latter pleaded non-assumpsit. On the trial at the New-York circuit, in July, 1843, the plaintiffs gave in evidence a letter addressed to themselves by the defendant in the following words: "Messrs. Fellows, Cargill & Co.—Gentlemen : I hereby agree to guarantee to you the payment of such amount of goods, at a credit of one year, int. after six months, not exceeding $500, as you may credit to John H. Prentiss of Herkimer. May 28th, 1835. Yours, &c. John H. Prentiss of Cooperstown." The plaintiffs in June following sold to J. H. Prentiss of Herkimer goods to the amount of $491,24, in consequence of the guaranty, upon the terms mentioned in it.

The plaintiffs also gave in evidence another letter from the defendant to them in these words:

"Cooperstown, July 13, 1836.

"Messrs. Fellows, Cargill & Co.—Gentlemen : My nephew, John H. Prentiss of Herkimer, who purchased about $500 in

goods of you in June, 1835, has been here to see me on the sub-
jest of his business, and of his indebtedness.   I learn from him
that he made you a payment in December last of $200, and that
the remainder of the debt incurred in June, 1835, remains unpaid.
He is desirous of adding to his stock from $300 to $400, and
thinks he can pay you on the old score about $200 and over.
I have ascertained from his townsmen, many of whom I know
personally, that he is a young man of industrious habits, and
that he gives undivided attention to his shop, and has no vices.
Under such circumstances, I am willing to continue to be his
surety, because I believe he strives to do all he can in his line,
and that his prospects are daily becoming better of increasing
his business.   The object of my present writing is to inquire
whether on the payment of $200, as above proposed, you would
be willing to let the balance of the old account be for future
payment, as his means shall be developed, and extend his credit
for whatever addition to his stock he may deem necessary.   If
your answer should be affirmatively, he will probably visit the
city sometime about the first of August.   If in the negative, I do
not wish any costs to be incurred; for in such case I will see the
debt wholly paid in the course of ninety days from this time.
Having made some investments at the west, it is not convenient
for me to pay the money for him at present; and indeed there
is great difficulty of raising money in the country just now,
which promises to be obviated by the sales of wool, which have
just commenced.   Respectfully, your ob't serv't,

" John H. Prentiss.

"The inventory of his goods shows that he has not credited
them improperly, but that his sales, although limited, have been
well made.   He has the goods on hand to an amount equal
to cover his indebtedness to you, at most.          J. H. P."

After this letter was received, and on the 29th day of August,
1836, Prentiss, of Herkimer, made a further payment of $200,
and the plaintiffs on the 1st day of September thereafter, made a
further sale of goods to him to the amount of $535,56.   They
attempted to prove that on the 28th July, 1836, they answered

the defendant's letter, accepting the terms which he had proposed; but the clerk who was examined for that purpose could only show that a letter was written and copied and placed upon the desk from which letters were usually sent to the post office. The judge rejected the copy, and the plaintiffs excepted. It appeared that on the 8th day of September, 1837, there was an adjustment between the plaintiffs and Prentiss of Herkimer, when after charging interest on the purchase, after six months, and crediting the payments, there was found due to the plaintiffs $674,05, for which they received from him three promissory notes for $100, $200, and $374,05—the two first at 60 and 90 days respectively, and the other in one day after date—and gave him a receipt acknowledging the payment of the account by these notes. After this evidence had been given the plaintiffs offered to prove that the note for $374,05, payable one day after date, " was intended as a mere memorandum note, giving no extension of credit, and intended only to fix the balance of the account;" but the offer was overruled, and the plaintiffs excepted. Prentiss, the purchaser of the goods, died about the first of June, 1838, having paid the first note, and $100 on the second; after which, some correspondence took place between the plaintiffs and defendant which it is unnecessary to state further than that the defendant in his letters mentioned, that he had directed an individual to take charge of the effects of the deceased, and inquired of the plaintiffs whether they would take such of the goods, which they had sold, as remained on hand, on account of their debt; which inquiry did not appear to have been answered. On a motion for a nonsuit, the judge held, 1st. That the last mentioned letter was a proposition which required an answer to render the writer liable as upon a guaranty; and 2d. That by the taking of the notes of the principal debtor, the plaintiffs had extended the credit, and that this discharged the defendant; and he accordingly nonsuited the plaintiffs, who excepted.

A motion to set aside the nonsuit was made in the supreme court; but it was denied, and judgment was rendered for the defendant. In the reasons assigned by that court for their decision, it was stated, 1. That the letter bearing date July 13, 1836,

did not amount to a guaranty, but was a proposition which re-quired the assent of the plaintiffs to certain specified terms and conditions, before it became obligatory on the defendant; and 2. That taking the notes of the purchaser for the balance of the account, payable upon time, was a valid extension of credit, and discharged the defendant from all liability.

The case was argued here by

*S. Schell & E. Sandford,* for the plaintiffs in error. They maintained the following propositions: 1. The letter of May 28, 1835, was a *continuing* guaranty. (*Mason* v. *Pritchard,* 12 *East,* 227; *Merle* v. *Wells,* 2 *Camp.* 413.) But if not origin-ally so, the subsequent letter, construed with it, gives it that effect. (*Eaton* v. *Shaw,* 1 *Har. & Gill,* 13; *Smith* v. *Dann,* 6 *Hill,* 543; *Douglass* v. *Howland,* 24 *Wend.* 50.) 2. The conditions annexed to the last mentioned letter were in fact per-formed by the plaintiffs' giving a further credit for the existing account, and making a further sale of goods as asked for, which was all which the writer required; and no notice of the accept-ance was necessary. (*Mactier* v. *Frith,* 6 *Wend.* 116; *Adams* v. *Ludsell,* 1 *Barn. & Ald.* 681.) 3. If a notice of acceptance was necessary to render the last letter obligatory, enough was proved to enable the jury to find that notice had been given, and the fact should have been submitted to them. (*Douglass* v. *Reynolds,* 7 *Pet.* 125.)

The giving of the notes by the purchaser did not, under the circumstances, discharge the defendant. In the last mentioned letter he expressly asked that a further credit might be given for the old debt, and for the purchases to be made. Besides, the plaintiffs should have been permitted to show that the last men-tioned note was made merely to liquidate the account, and that no further credit as to that amount was intended to be given.

*J. A. Spencer,* for the defendant in error, relied upon the grounds upon which the nonsuit was granted at the circuit and sustained by the supreme court, and cited, *Stafford* v. *Low,* (16 *John.* 16;) *Taylor* v. *Wetmore,* (10 *Ohio Rep.* 490;) 1 *Maule*

*& Sel.* 557; *Hunt* v. *Smith,* (17 *Wend.* 179; *Combe* v. *Woolf,* (8 *Bing.* 156;) *Wright* v. *Johnson,* (8 *Wend.* 512.)

THE CHANCELLOR. The object of this suit was to charge the defendant, as guarantor for the indebtedness of his nephew. And to render him liable, it is necessary that he should have entered into a written agreement to be answerable for such indebtedness; and that the consideration for such agreement should be expressed therein. (2 *R. S.* 135, § 2.) The guaranty of the 28th of May, 1835, was such an agreement; as it showed that the goods to be delivered to the nephew, on credit for one year, to an amount not exceeding $500, were the consideration of the defendant's promise to guaranty the payment. Goods to the amount of $491,24 were delivered to the nephew, upon the faith of that guaranty; for which he paid the plaintiffs $400 in December, 1835, and August, 1836. For the residue of those goods the defendant is still liable, unless the plaintiffs have discharged him from liability by the extension of credit to the nephew; by taking his notes on the 8th of September, 1837, which notes included such residue and the interest thereon after six months.

Under the letter of the defendant of the 13th of July 1836, however, I do not think the defendant was ever legally liable as surety for the nephew for the goods subsequently delivered. The terms of that letter are so ambiguous that it is somewhat doubtful whether the writer intended to express his willingness to guaranty the payment for the new stock of goods, to the amount of three or four hundred dollars; or merely to continue to be his surety for the balance of the previous indebtedness in case Fellows, Cargill & Co. should consent to an indefinite extension of payment upon the terms proposed. I am inclined to think, however, that a guaranty for the further sale, as well as an extension of the old credit, was intended. But it is perfectly evident that the defendant did not intend to agree to be liable to the plaintiffs for any future sales to his nephew, unless they should upon the receipt of his letter answer the same and agree to the terms therein proposed. An affirmative answer agreeing to those terms, therefore, was the consideration, and also

the condition, upon which the defendant was to continue to be the security for the nephew.   This letter of the defendant was mailed at Cooperstown, the day after its date; and there is no pretence that the plaintiffs answered it until a fortnight afterwards.   And there was no legal evidence offered to show that they answered it at all; except what might be inferred from the fact that a month after the time indicated in the defendant's letter, the nephew went to New-York and paid $200 on the old debt, and made a new purchase of goods to an amount considerably exceeding the largest sum mentioned in the defendant's letter of the 13th of July.   The claim against a surety is *strictissimi juris ;* and to render the guarantor liable it is incumbent on those who claim the benefit of the guaranty to show that its terms have been strictly complied with.   (*Campbell* v. *French,* 6 *T. R.* 200.)

But even if the defendant was originally liable as guarantor for the goods sold his nephew on the 1st of September, 1836, he was discharged from his liability for those goods as well as for the balance due upon his original purchase, by the new arrangement made by the plaintiffs with the nephew on the 8th of September, 1837, after the year's credit on the last purchase had expired.   That was not only an extension of credit for a part of the demand for ninety-three days, for another part for sixty-three days, and for the residue for four days, including the days of grace upon the several notes, but in fact constituted a new contract.   For the interest on the account up to that date was computed and included in the new notes, so as to entitle the payees of the notes to interest upon the interest which had then accrued. So that the amount recoverable upon the notes would be different from that which the plaintiffs would have been entitled to recover upon the original contract.   And as the written receipt and the notes showed that those notes were received in payment of the original account and interest thereon to that date, the circuit judge very properly refused to allow evidence to contradict the written statement, and to show that one of the notes was a mere memorandum note which gave no extension of credit.   It is perfectly clear that the defendant's nephew could not have

been sued upon the original indebtedness, or any part thereof, between the 8th and the 12th of September, 1837, even if the plaintiff could have sued him upon the account for the goods and interest, after those notes had become payable by the terms thereof. And the extension of the credit for a single day without the consent of the surety would discharge him as effectually as a novation to which he was not a party. It is a general rule that the giving a promissory note for a pre-existing debt is only a payment *sub modo,* unless there is an express agreement that it shall be received in payment. And the plaintiff at the trial may recover for the original indebtedness, upon producing and cancelling the note, provided he was the owner of such note at the time of the commencement of the suit. But if the creditor takes the bill or note of his debtor, payable at a future day, it is an extension of credit; and he cannot legally commence and sustain a suit for the original indebtedness until such bill or note becomes due and payable. (*Stedman* v. *Gooch,* 1 *Esp. N. P. Rep.* 3; *Putnam* v. *Lewis,* 8 *John. Rep.* 389.)

The nonsuit was therefore properly directed in this case; and the judgment should be affirmed.

HAND, Senator. The decision of this case involves the following questions: Was the defendant by his letter of May 28th, 1835, a *continuing* guarantor? Is the defendant bound by his letter of July 13th, 1836? If otherwise liable, was the defendant discharged by the transaction between the plaintiffs and the principal debtor on the 8th of September, 1837?

We are referred by counsel to the cases of *Mason* v. *Pritchard,* (12 *East,* 227,) and *Merle* v. *Wells,* (2 *Camp.* 413,) to show that this was a continuing guaranty. The guaranty in *Mason* v. *Pritchard* was "for any goods he [the plaintiff,] hath or may supply my brother W. P. with, to the amount of £100." In that case the two first purchases exceeding £100, had been paid for, and the action was brought to recover for a third supply. The king's bench held it a guaranty continuing until the credit should be recalled. The case in *Campbell* was on a guaranty reciting that defendant's brother had applied to him to

be bound for goods "necessary in his business," and then bound
the guarantor "for any debt he may contract for his business as
jeweller, not exceeding £100, after this date." Lord Ellen-
borough at *nisi prius* held it a continuing guaranty. I see no
objection to the rulings in these two cases. I take it the rule is
this: Where by the terms of the guaranty, it is evident the ob-
ject is to give a standing credit to the principal, to be used from
time to time, either indefinitely or until a certain period, there
the liability is continuing; but where no time is fixed and nothing
in the instrument indicates a continuance of the undertaking,
the presumption is in favor of a limited liability as to time,
whether the amount is limited or not. If the contract is silent
and free from all motive and consideration except voluntary as-
sistance to a friend, I agree with Mr. Justice McLean in *Mauran*
v. *Bullus*, (16 *Pet. Rep.* 537,) that "generally, all instruments
of suretiship are construed strictly, as mere matters of legal
right." In *Cremer* v. *Higginson*, (1 *Mason's Rep.* 323,) Judge
Story says "The language of a letter should be very strong, that
would justify the court in holding a guaranty to be a continuing
guaranty."

The following are some of the contracts held to be continuing
guaranties. "I guaranty the payment of bills of merchandise
that Mrs. P. has purchased, or may purchase of B. & Co.—Mrs.
P. having 90 days credit on the purchases, the amount of this
guaranty not exceeding $200, and to expire in one year from
date." (*Clark* v. *Burdett*, 2 *Hall*, 197.) "I will guaranty their
engagements, should you think it necessary, for any transactions
they may have in your house." (*Grant* v. *Ridsdale*, 2 *Har.
& J.* 186.) "I hereby undertake and engage to be answerable
to the extent of £300, for any tallow or soap supplied by Mr.
Bastow, to France & Bennett." (*Bastow* v. *Bennett*, 3 *Camp.*
220.) "Goods delivered in umbrellas," &c. to A. "according to
the custom of his trading with you in the sum of £200." (*Har-
greave* v. *Smee*, 6 *Bing.* 244; *S. C.*, 3 *Moore & Payne* 573.
*See also Douglass* v. *Reynolds*, 7 *Pet. Rep.* 113; *and Law-
rence* v. *McCalmont*, 2 *Howard's U. S. Rep.* 426.)

On the other hand, the following have been held not to be

continuing guaranties. "If D. wishes to take goods of you on credit, we are willing to lend our names as security for any amount he may wish." (*Rogers* v. *Warner*, 8 *John.* 119.) "The object of the present letter is to request you, if convenient, to furnish Messrs. H. with any sum they may want as far as $50,000. We shall hold ourselves answerable to you for the amount." (*Cremer* v. *Higginson*, 1 *Mason*, 323.) "Should you be disposed to furnish C. with such goods as he may call for, from $300 to $500 worth, I will hold myself accountable for the payment, should he not pay as you and he shall agree." (*Rapelye* v. *Bailey*, 3 *Conn.* 438.)

On an examination of the above and many other cases that might be cited, I think it clear that the instrument given by the defendant in this case, was a limited and not a continuing guaranty. There is not a word that gives authority to the original parties to carry the dealing beyond a single transaction.

As to the letter of July 13th, 1836, I have no difficulty. If proof of assent on the part of the plaintiffs had been shown, I do not see in the case any evidence of compliance on their part with its terms. The dealing between the creditor and the principal debtor must be in strict conformity to the letter of credit, and must be shown by them to be so. As Chancellor Kent says, "The claim against a surety is *strictissimi juris*." (3 *Com.* 124. *And see notes to same, and Stafford* v. *Low*, (16 *John.* 67 ; *Adams* v. *Jones*, (12 *Pet. Rep.* 207, *and Combe* v. *Woolf*, 8 *Bing.* 156.) But there is no evidence that an answer to the defendant's proposition was ever given ; and until that was done there was no contract. The minds of the contracting parties must meet. (*Mactier* v. *Frith*, 6 *Wend.* 103.)

If a majority of this court should concur in the views above expressed, the consideration of the effect of the subsequent transactions between the plaintiffs and J. H. Prentiss of Herkimer, will be supererogatory. But should they think otherwise, still the settlement between the creditor and the principal debtor is fatal to this action. Taking a note from a debtor for a debt due on a simple contract, though it does not merge the contract, and a suit may generally be brought upon the original consideration

by producing and delivering up the note at the trial, has always been considered a valid agreement between the parties, and a suspension of the day of payment until the note becomes due. Another principle familiar to the profession, and which I take it is unquestioned at this day, is, that any alteration of the contract between the creditor and the principal debtor, without the consent of the surety, discharges the surety; and courts will not stop to inquire whether the alteration is, or may be, prejudicial or beneficial to the surety. He is sponsor for one contract, and no one has a right to make another for him. (11 *Wend.* 312; 13 *id.* 375; 17 *id.* 179; 15 *id.* 329; 5 *Hill*, 463; 1 *Denio*, 116; 1 *Holt*, 84; 1 *Brock. Rep.* 224; 2 *id.* 252; 1 *Turn. & Russ. Rep.* 224; *Poth. Ob.* 427, 514, 520.) So careful of the rights of a surety are the courts, that if the benefit of his right of subrogation has been impaired by the creditor, even by negligence, as if collateral securities are given up, or lost by neglect, the surety is discharged, at least *pro tanto.* Here the notes of the principal debtor on time were taken, which suspended the right of the surety to pay the debt and seek indemnity from his principal; and this, if only for a day, discharges the surety.

The judgment should be affirmed.

Lott, Senator. The nonsuit was properly granted. The letter of the defendant under date of July 13th, 1836, was not a guaranty. It was a mere letter of inquiry, contemplating in its very terms an answer. He expressly declared that his object in writing was to inquire whether the plaintiffs, on the payment to them of $200 by his nephew, would be willing to let the balance of the old account be for future payment, as his means should be developed, and extend his credit for whatever addition to his stock he might deem necessary. It is true, he had previously stated that he was willing to continue surety, but only under the circumstances specified. Until the plaintiffs assented to the terms, the letter was a mere proposition. In *McIver* v. *Richardson*, (1 *M. & S.* 557,) the defendant, after giving strong assurance of the probity and honor of the persons recommended, added, "Indeed I have no objection to guaranty

you against any loss from giving them this credit;" and in *Staf ford* v. *Low,* (16 *John.* 67,) the letter claimed as a guaranty concluded by saying : " If in addition to the foregoing explanation, you shall require any individual guarantee, I shall have no objection to give you that pledge." Both were held to be merely propositions leading to a guaranty, and it was declared that they must be accepted to create a liability. (*See also Beekman* v. *Hale,* 17 *John.* 134.) This case is not like those of *Whitney* v. *Groot,* (24 *Wend.* 82,) and *Smith* v. *Dann,* (6 *Hill,* 543.) In these cases the defendant asked the plaintiffs to sell on a promise to guaranty the payment. They assented and delivered the goods. The proposition of the one party was accepted by the act of the other. There was nothing to raise the presumption that an answer was contemplated.

The proof to show an acceptance of the defendant's proposition was clearly insufficient. The mere writing of a letter and laying it on a desk from whence it was usually taken by one of the younger clerks to the post office, certainly does not prove that it *was* taken. It would have been more satisfactory to have shown its deposit in the office by the clerk making it. It was said, however, that the subsequent sale by the plaintiffs to young Prentiss was evidence of its transmission, and receipt by the defendant. That position assumes that credit would not have been given except on the faith of the letter, an assumption for which there is not the slightest foundation ; on the contrary, the fact that the sale was to an amount considerably beyond the sum specified in the letter rebuts the position.

It was moreover urged that if the letter above referred to did not create a binding obligation, still the defendant was liable under his guaranty contained in his prior letter for the amount of the second purchase as well as for the balance due on the first. To maintain this proposition it is insisted that it is a continuing guaranty. This proposition cannot be sustained. The guaranty is for the payment of such an amount of goods at a credit of one year, (interest after six months,) not exceeding $500, as the plaintiffs might credit to John H. Prentiss of Herkimer. The amount was limited to a certain sum and at a specified credit,

and clearly contemplated one transaction only. Upon general principles, a strict interpretation should be applied in favor of a surety. The guaranties in *Whitney* v. *Groot*, (24 *Wend.* 82,) and in *Rogers* v. *Warner*, (8 *John.* 119,) were much more general in their phraseology than this. In the latter case the words were, "If Elias Warner and D. W. Bostwick, our sons, wish to take goods of you on credit, we are willing to lend our names as securtiy for any amount they may wish;" yet they were held to contemplate a single transaction. But if it were otherwise, the sales made in September, 1836, did not come within its terms.

The only remaining question is, whether the defendant is responsible for the balance due on the original guaranty. It is a well settled rule, that any extension of credit to the principal discharges the surety. Here, Prentiss of Herkimer and the plaintiffs came together and made a settlement of the balance due on the first as well as the second purchase, by the acceptance of the notes of Prentiss payable at a future day. If it be conceded that the original indebtedness was not discharged, yet the remedy of the plaintiffs for the whole debt was suspended. It is true, it does not appear that the note payable one day from date was negotiable. If that fact were material, it was incumbent on the plaintiffs to have proved it. The decision of the circuit judge will be presumed to be right, unless error is shown. It was clearly inadmissible to show by parol evidence, that the last note was intended as a memorandum note merely, giving no extension of credit, and intended only to fix the balance of the account. It would contradict the plain and obvious meaning of the instrument. At the time this settlement was made the surety, by payment, would have had an immediate remedy over against the principal; and he had the right without payment to insist on a direct and immediate suit against the principal for the money. These remedies were both suspended by the act of the plaintiffs. It is well settled that such an extension to the principal for a precedent debt discharges the guarantor. (*Combe* v. *Woolf*, 8 *Bing.* 156; *Hunt* v. *Smith, sup.*)

In any view I can take of the case, the judgment below should be affirmed.

PUTNAM, Senator. Upon the argument of this cause, my first impression favored an affirmance of the judgment. But upon a more minute examination of the letter of July, 1836, and the other evidence offered on the trial, I am of the opinion that the plaintiffs were improperly nonsuited, and that the cause should have gone to the jury. If the import and object of the letter was an inquiry merely as to what the plaintiffs would be willing to do about extending the old account and giving a new credit, in order, in case a favorable answer should be received, that the defendant might, if he saw fit, become surety, it is certain that the letter *per se* would not make him liable. An answer, if nothing more, would be necessary. Or, if the letter contains only a conditional proposition, it could be made absolute or obligatory only by an answer accepting the terms proposed. But I do not consider the letter of doubtful import. By it the defendant informs the plaintiffs that his nephew is desirous of adding to his stock from $300 to $400, and, after stating the reasons he had for confiding in his integrity as well as capacity as a business man, he says, that under such circumstances, he is willing to *continue* to be his surety. This must of course have respect to the desire of his nephew of adding to his stock of goods. The defendant after all makes his liability rest upon a condition to be complied with by the plaintiffs, viz. that, after the payment of $200 on the old account, the balance should be extended for future payment as his nephew's means should be developed. The letter goes on and inquires whether the plaintiffs will extend a credit for additional stock. Taken in connection with what precedes this part of the letter, it is saying in substance, "I will be surety for my nephew, if you will give him credit for additional stock;" which is a sufficient promise in writing, if a credit should be given upon it. As to the condition above referred to, extending payment on the balance of the old account, I can see no necessity of a notice. It was only necessary, if at all, by way of apprising the nephew that he could or could not have

Fellows *v.* Prentiss.

additional goods according to the proposition. Now such notice was given by some means or other, for he afterwards had more goods according to the proposition in the letter. In one sense, notice was necessary, that is, to give information that goods could be had, but not necessary as adding in any respect to the safety of the defendant; nor does the letter, or any part of its language, contemplate a notice for such purpose. Inasmuch, therefore, as the letter contains an agreement to become surety on conditions which were complied with, as fully appears by the subsequent payment of $200 and the further sale of goods, I am of opinion that the defendant's liability became fixed on the sale of the goods. If a reply or notice was at all necessary, the giving of it may be inferred from the subsequent proceedings, viz. the payment of the $200, and the giving of further credit. It was, at all events, proper for the consideration of the jury.

And again, strong presumptive evidence was offered going to prove that an answer was given, or that it was waived. I refer to the correspondence subsequent to the death of Mr. Prentiss of Herkimer. The defendant's liability was fully charged by the plaintiffs in their letter. In the defendant's answer, written after he had taken counsel, instead of denying his liability, he directly assented to it by speaking of the mode of proceeding in the settlement of his nephew's estate. And, if there was no other legal objection against the plaintiff's recovery they were entitled to this evidence, that the jury might draw such conclusions from it, as to notice or waiver, as they should consider it entitled to.

But it is claimed on the part of the defendant that the plaintiffs changed the contract by extending the time of payment to the principal, and thereby discharged the surety. This objection is not, in my opinion, sustained by the evidence. The judgment of the supreme court should be reversed, and a new trial ordered.

On the question being put, "Shall this judgment be reversed?" The members of the court voted as follows:

*For reversal: Senator* PUTNAM.

*For affirmance :* THE PRESIDENT, THE CHANCELLOR, and *Senators* BARLOW, BEERS, DENNISTON, DEYO, EMMONS, HAND, HARD, LESTER, LOTT, MITCHELL, PORTER, SANFORD, J. B. SMITH, S. SMITH and TALCOTT—17.

Judgment affirmed.