According to the contract between the plaintiffs and White, they were to sell to him goods, from time to time, and he was to pay them therefor at the expiration of the specified period of credit. On the back of that writing, the defendant signed an agreement, of the same date, declaring that he would "be responsible for all such goods as White should buy of the Messrs. Church (the plaintiffs), within one year from the date, and which shall not be paid for according to the within contract." These two instruments were made up at the same time, and the one which the defendant signed, expressly refers to the other. It is a direct and irresistible inference from the writings themselves, that the undertaking of the defendant was the foundation of the credit on which the goods were to be sold and delivered to White. The sale and delivery of those goods, was, therefore, the consideration of the defendant's agreement. This conclusion is perfectly plain on the face of the instrument. No extrinsic proof is required, nor is it even necessary, for this purpose, to turn the paper over and look at the other side. There is no occasion to consult the principal contract, except to ascertain the term of credit. The collateral writing, itself, discloses the consideration on which it was given, to be the prospective sale of goods to another person. That this is sufficient within the statute of frauds, is certainly plain in principle, and it is moreover as well settled by authority as any legal proposition can be. (Bailey v. Freeman, 11 Johns., 221; Rogers v.Kneeland, 10 Wend., 219; S.C. in error, 13 Id., 115;Marquand v. Hipper, 12 Wend., 520; Whitney v. Groot, *Page 329 
24 Id., 82; Walrath v. Thompson, 4 Hill, 200; Fellows v.Prentiss, 3 Denio, 512; Staats v. Howlett, 4 Id., 559;Union Bank v. Coster's Executors, 3 Comst., 203; Gates v.Mc Kee, 3 Kern., 232.) An undertaking, by one person, to be responsible for goods to be delivered to another, is, in effect, a request to deliver the goods. It is, in law, no more and no less than a letter of credit, general or particular, according as it may or may not have a particular address; and, if we hold such undertakings, when in writing, to be invalid, for want of a consideration expressed, we strike at a vast number of the commercial guarantees which are used in the dealings of mankind. The principle on which these guarantees rest, is simple and elementary. It is this: A promise to do an act, in consideration of an act to be done by the promisee, implies a request that the promisee, on his part, shall perform the act specified. If the promisor is to receive the direct benefit of the thing to be done, then the undertaking is original, and need not be in writing. If another person receives the benefit, and becomes originally liable, then the undertaking is collateral, and must be in writing. But in either case, the consideration is the performance of the act on the request of the promisor (UnionBank v. Coster's Executors, supra), and, as I have said, an agreement to pay for goods to be delivered, plainly imports a request that they shall be delivered.
The Supreme Court pronounced the judgment under review, upon the supposed authority of Brewster v. Silence (4 Seld., 210), as the latest decision of this court affecting the question. We followed that case in the very recent one of Draper v. Snow
(20 N.Y., 331), but, in so doing, it is proper to say that some of the members of this court, finding that no distinction between the two cases existed, did not examine the principles involved, or the antecedent authorities. The present case has led me to that examination, and I am so well satisfied that we were in error that I feel myself bound to say so. In Brewster v.Silence, the guarantee sued upon was written at the foot of a promissory note, and it was executed and delivered at the same time with the note. The instrument was held to be void *Page 330 
under the statute of frauds, on the ground that it did not express the consideration. But the guaranty referred to a note which did express a consideration, received by the principal debtor. The legal import and language of the defendant's contract, therefore was, that in consideration of money, or some other value received by the principal debtor, he, the defendant, undertook that this note should be paid at maturity. As both instruments were executed and delivered at the same time, and to the same person, the presumption of law was that both were the foundation of the credit; in other words, that the value, which the note expressed, in the general language used in such instruments, was parted with by the payee, on the strength of the guaranty, as well as the note. These principles of construction, which, I persuade myself, are simple and elementary, if they had been adopted, would have led to a different conclusion. But they do not appear to have been overlooked. The precise error in the case, it seems to me, was in looking at the guaranty, without looking at the other instrument, which became a part of it by express reference. This was discarding a universal rule for the interpretation of writings. I fully agree that the statute of frauds, in its very letter, requires a consideration to be expressed in the collateral undertaking. But what is the collateral undertaking? The answer plainly is, that it is made up, not only of the particular writing to which the name of the guarantor is signed, but of all others which that refers to and adopts. If, therefore, the consideration appears in any one of the writings, which, together, constitute the contract, the requirement of the statute is answered.
Cases, almost without number, might be cited to support the rule of construction here laid down. Without referring to them at large, I will mention one of a very marked character, which arose under a statute quite as precise, in its terms, as the statute of frauds. In Tonnelle v. Hall (4 Comst., 140), a testator had disposed of real estate, in the body of his will, by designating the numbers of the lots, according to a map, a copy of which was attached after the signatures of the testator and the witnesses. The reference to the map was as follows: "Which *Page 331 
said lots are designated on a certain map, now on file in the office of the register of the city and county of New York, a copy of which, on a reduced scale, is hereto annexed," and then followed a particular description of the map on file. A blank sheet intervened between the attestation clause of the will and the signatures, and the copy of the map. There was in the body of the will no description of the real estate sufficient to pass the title thereto, without a reference to the map. The statute of wills requires that the testator shall "subscribe," and the witnesses shall "sign" their names at "the end of the will." This court held, upon the fullest consideration, that the map was, in judgment of law, incorporated into the body of the will; and consequently that the instrument was subscribed, at the end thereof, as the statute required. This decision is of great significance, when it is considered that the statute of wills, as contained in the Revision of 1830, was designed to abrogate the construction which had been given to the English and our own former statute, by requiring the testator's signature to be written in a literal and exact sense, at the end of the will.
Referring now again to Brewster v. Silence, I find it suggested in the opinion which is reported, that our present statute of frauds was intended to alter the former one, by requiring the consideration to be expressed. It is added, that "since the Revised Statutes, something more than mere argument and inference have been deemed necessary to make out a consideration." With much deference, I think that such suggestions are not entitled to the weight which appears to have been given to them in determining that case. The statute of frauds, in the respect under consideration, underwent no change in our revision. It had been long and perfectly well settled, both in England and this State, that by force of the word "agreement," contained in the old statute, the consideration, as well as the promise, must be expressed where the undertaking was to answer for the debt or default of another person. Then as to "mere argument and inference," if, by the use of this phraseology, the learned judge who gave the opinion intended to say that argument and inference are to be excluded in the consideration of these *Page 332 
questions, the proposition seems to me to be plainly unphilosophical and unsound. It is enough on this point to say, that wherever there is room for difference of opinion, the construction of a written instrument is always open to argument, and that whatever may be fairly inferred from the language used, and the surrounding circumstances viewed in connection there with, is in judgment of law a part of the written language itself. These principles are applicable to all contracts, those coming within the statute of frauds forming no exception. I agree that a consideration is not to be implied, but this only means that when there is no expression of the parties, in any part of the contract, from which a just inference can be drawn, there is no mere implication of law that a fact exists, in regard to which the instrument itself is entirely silent. The distinction between express and implied covenants, will illustrate the idea. Express covenants are created by any words, in a sealed agreement, evincing an intention to be bound by the obligation. Every form of expression, however slight and inartificial, declaratory of such an intention is an express covenant. Implied covenants, on the other hand, are those which depend for their existence on a mere intendment of law. Thus, a lease without any expression, whatever, beyond the usual words of demise, imports a covenant for quiet enjoyment. So, according to the common law, a covenant was implied from certain words in a deed, which were literally words of grant or conveyance only. (Platt on Covenants, 26, 40.) The statute of frauds requires certain contracts to be in writing, and the consideration to be expressed. By this it was simply intended that the courts are not to imply a consideration, or suffer it to be proved by parol, when none appears in the terms or admissions of the contract itself. But the mode of expression is not determined by the statute. It may be in plain and direct words: it may be by the mere use of a seal: or it may be the result of a just inference from the language of the contract, examined in all its parts.
This question has very lately been examined and decided by the Supreme Court of New Hampshire, in the case of Simmons v.Steele (36 N.H., 73). In that case the principal debtor, *Page 333 
which was the New Hampshire Central Railroad, had signed a writing acknowledging the receipt, from the plaintiff, of seventy-two shares of stock, and promising to return the same in one year, with certain interest specified. The defendants, at the same time, executed a collateral instrument at the foot of the other, in this language: "We guarantee the fulfillment of the above obligation, and hereby promise that said stock shall be returned at the time specified." The action was on that guaranty, and the question, under the statute of frauds, was, whether it expressed a consideration. The court held that it did, and the reasons given for that conclusion appear to me entirely unanswerable. "It is very clearly apparent," the court said, "from an inspection of both what are called the principal and collateral contracts, that both were made at the same time, and for the same consideration, to wit: The loaning of the stock to the Central Railroad — and also that the collateral contract was an essential ground of the credit given to the principal, or direct debtor. In such cases it is not necessary that there should exist, or be expressed in writing, any other consideration than that moving between the creditor and original debtor, for the consideration of one is manifestly that of the other." Again it was observed, "Here is such an intimate connection in sense between the two agreements, apparent on their face, that there can be no difficulty in collecting, without the aid of parol evidence, from the principal agreement, the consideration of the collateral one. The reference in the latter to the terms of the former is equivalent to an admission; at all events, the fair and necessary implication is, that the consideration of the defendant's promise was the receipt by the said railroad of the borrowed stock. The only legitimate inference from the expressions used in the contract of guaranty itself is, that such was the consideration of the defendants' engagement."
This conclusion of the Supreme Court of New Hampshire is identical with the main proposition enunciated by Chief Justice KENT, in Leonard v. Vredenburgh (8 Johns., 28), the correctness of which was never questioned in this State for forty years. I have looked at all the cases antecedent to the decision *Page 334 
in Brewster v. Silence, and I am confident that not one of them is in conflict with that proposition. On the contrary, there are few cases in the books which have been more frequently referred to, as the unquestioned law of the land, in respect to the main point determined. That point was, that a guaranty at the foot of a note, executed at the same time, and delivered with it, is to be read in connection with the principal contract, and is supported by the same consideration. The doctrine was not applied by Chief Justice KENT, and I do not apply it, to cases where the consideration between the principal parties is executed and past before the guaranty is made. In such cases, the difficulty is not in the want of a consideration expressed, but it arises out of the insufficiency of that consideration to sustain a collateral promise, whether in writing or not. To this class belong the cases of Smith v. Ives (15 Wend., 182), Parker v. Wilson
(Id., 343), Hall v. Farmer (5 Denio, 484), S.C. on appeal (2 Comst., 553), and these were the only ones cited in Brewster
v. Silence, which were supposed to have the slightest tendency to support that decision. In all these cases, remarks of a general nature were made by judges, relative to the necessity of having a consideration appear upon the face of such collateral promises, as come within the statute of frauds. Such a proposition, no one disputes; but the precise point is whether the requirement of the statute is not complied with, when a guaranty refers in terms to another contract, made and delivered at the same moment of time, in which a present consideration, for both the writings, is expressly stated. Believing this to be a plain question, upon the examination I have now given to it, and that great mischief and inconvenience will arise in the business of the community, if error shall become established law on this subject, I have felt it necessary to make these comments upon one of the decisions of this court. I have made them with greater freedom, because I followed that decision, with my associates, in the very recent one which has been mentioned. With my present convictions, I shall be prepared, hereafter, to uphold the contracts and dealings of men belonging to the class which are condemned in the decision referred *Page 335 
to. We ought to feel no hesitation in correcting the error, if there be one; because its correction can do no possible injury. When the rules laid down by the courts become the laws which sustain titles and contracts, they are, in general, to be sacredly adhered to, but when they can be used only as instruments of destruction, error ceases to be sacred, and principle and truth ought to be reasserted.
I am of opinion, however, that the court below erred in supposing that the present case was entirely undistinguishable from that of Brewster v. Silence. In that case the guaranty, without a reference to the note at the foot of which it was written, did not state a consideration. In the present one, the instrument, examined by itself, shows that the plaintiff was proposing to sell goods to the principal debtor, and that the guaranty was intended to assure to him the payment for those goods. I think, myself, that this distinction is of no great value; because, for the reasons which have been given, I do not doubt that the defendants' agreement would, for every legal purpose, have been the same, if, referring to the principal contract, it had simply, and without other words, guarantied the performance thereof. If that had been the form of the writing, the one to which it was annexed, and to which it referred, would have shown with equal clearness that the intended sale of goods was the basis of both the contracts. There cannot be much difference between a promise, which, by its own terms, guaranties a certain debt to be contracted by another person, and one which, in general words, refers to, and guaranties the performance of the other person's obligation, when that obligation, on its face, shows that the thing guarantied is precisely the same. Nor can there be any wide distinction between a collateral undertaking, in either of these forms, to answer for a credit to be given, and one to answer for a credit actually given at the very moment when the undertaking is entered into. If in one of these examples, we may look at the principal writing, in order to ascertain what it is that is guarantied by the instrument annexed, and thus to learn the consideration, we surely may do so in the other. Upon distinctions such as these, however *Page 336 
slender as they seem to be, the case of Brewster v. Silence
must have proceeded, and they are therefore just as valuable as are the principles which that decision involves. If we are to understand that case as not resting upon such distinctions, then we must view it as directly in conflict with the Union Bank v.Coster's Executors, also determined by this court, and with a long and unbroken series of decisions in the courts of England, and in this State. But the Union Bank v. Coster's Executors,
and the numerous class of cases to which it belongs, do not appear to have been even referred to; and therefore it could not have been intended to overrule them. In that class the present controversy is included; and however slight or groundless, in principle, may be the distinction between it and the case which the court below profess to have followed, it is nevertheless a distinction which offers the only solution to that case.
Entertaining no doubt that the instrument, on which this suit was brought, is a valid guaranty within the statute of frauds, I think the judgment of the Supreme Court should be reversed and a new trial granted.
WELLES, J., concurred in this opinion; DAVIES and BACON, Js., were for reversal, expressing no opinion in respect to the points of difference in the reasoning of COMSTOCK, Ch. J., and WRIGHT, J.
Judgment reversed and new trial ordered.