Cochran *v.* Kennedy.

---

Thomas Cochran *et al.*, Respondents, *against* George H. Kennedy, Appellant.

(Decided February 6th, 1882.)

By an instrument under seal the defendant guaranteed to C. M. & Co. "the due and punctual payment at maturity of all purchases made of them" by S. for Y. & H., not to exceed a specified sum, from a date named, "said purchases to be based upon a credit of or such other time as may be agreed upon" between C. M. & Co. and S. Various purchases were accordingly made by S. from C. M. & Co.: in

Cochran *v.* Kennedy.

some cases, upon a credit which was fixed at the time of the purchase; in other cases, goods were ordered generally, and, upon a statement of account afterwards, a credit was agreed upon and notes were given for the time thus fixed: and in some cases the notes falling due at the expiration of the first credit were renewed. *Held,* that in cases of renewals, either of notes which fell due, or at the expiration of the term of credit agreed upon, the defendant was released from his liability as guarantor for those purchases.

APPEAL from a judgment of this court entered upon the report of a referee, and from an order denying a motion to vacate the report or to refer it back to the referee.

The facts are stated in the opinion.

*W. B. Putney,* for appellant.

*John E. Parsons,* for respondent.

VAN BRUNT, P. J.—This action was founded upon a guarantee made by the defendant and given to the plaintiff in the following language :—

"For and in consideration of the sale and delivery of goods, wares and merchandise and also a further consideration of the sum of one dollar to me in hand paid by Cochran, McLean & Co. of New York, the receipt of which is hereby acknowledged, I hereby guarantee unto them the due and punctual payment at maturity of all purchases made of them by P. R. Sabin, for Younglove & Harrington, of Jackson, Michigan, not to exceed an amount of five thousand dollars ($5,000) from the 16th day of October, 1874, said purchases to be based upon a credit of              or such other time as may be agreed upon between said Cochran, McLean & Co. and said P. R. Sabin, and I hereby waive demand of payment as the representative bills fall due them, provided thirty days be allowed for adjusting in the event of any note or account not being paid at maturity. This obligation and guarantee to be

an open and continuous one until revoked by me in writing. Dated at New York, this 16th day of October, 1874.

Witness my hand and seal.

    [Signed]             Geo. H. Kennedy.  [Seal.]

Witness.

   R. Elder, Jr.,

       Notary Public, N. Y. Co."

The complaint alleges the making of the guarantee, the sale and delivery of goods by the plaintiffs to the amount of $5,000 in reliance upon it, payment therefor demanded and not made, and notice thereof given to the defendant. The answer admits the making of the guarantee, denies the sale of the goods upon the faith of the guarantee, and avers that the sellers, without the knowledge and consent of the defendant, changed and extended the time or credit on the sales after they were made; and also claims that a continuous credit was given to an amount in excess of the amount specified in the guarantee. In regard to the last proposition, it is to be observed that by the terms of the guarantee itself it was to be an open and continuous one until revoked by the guarantor, and the reading of the guarantee seems to convey to the mind the idea that the limitation of $5,000 contained in the guarantee was not intended to apply as a limitation to the amount of credit which was to be given to the purchasers of the goods, but rather to restrict the amount of the liability to which the defendant would be liable because of such guarantee. In the cases of *Curtis* v. *Hubbard* (6 Metc. 186), and *Washington Bank* v. *Shurtleff* (4 Metc. 30), language of a similar character received this construction.

The main point, however, which must be considered upon this appeal, is the allegation contained in the answer, that the sellers, without the knowledge and consent of the defendant, changed and extended the time of the credit on the sales after they were made. The terms of the guarantee were, in respect to credit, that the purchases were to be based upon a credit of         or such other time as may be agreed

upon between said Cochran, McLean & Co. and said P. R. Sabin.

The language so employed would seem to imply that there should be an agreement as to credit, between Cochran, McLean & Co. and Sabin, in reference to the credit. Such agreement might be, in its nature, a general one applying to all purchases which were made, or it might be an agreement as to credit, made at the time of each individual purchase, or a general agreement might have been arrived at which would apply to all purchases where a special agreement was not entered into varying its terms, but the terms of credit must be fixed ; they could not be left indefinite or uncertain.

The language of the guarantee is, "said purchases to be based upon a credit of            or such other time as may be agreed upon between Cochran, McLean & Co., and said P. R. Sabin." It would not for a moment be argued that if the blank had been filled in for any definite time, and the clause following had been omitted, but that any variation in the credit from such term would have absolved the guarantor. Now instead of fixing the term of the credit himself with Cochran, McLean & Co., he has authorized that Mr. Sabin shall fix the length of the credit upon which such purchases should be made. This evidently means that they shall agree, either at the time of the purchase, or at some time prior to the purchase, upon a basis of credit, which is to apply to each individual purchase, and as an elementary principle of law, when that time was fixed, neither Mr. Sabin, nor Cochran, McLean & Co., or both, could alter that time of credit without releasing the guarantor. Now, before the signing of this guarantee, some conversation was had between Cochran, McLean & Co. and Sabin in regard to terms of credit. Any agreement which was entered into between Cochran, McLean & Co. and Sabin, if such an agreement had been established prior to the execution of the guarantee, would not be a fixing of the terms of credit within the scope of the guarantee. The agreement between Cochran, McLean & Co. and Sabin, which is to be covered by the guarantee, must have been made after the guarantee and after Mr. Kennedy had clothed Mr. Sabin with that

power and authority. The evidence in this case shows that in some cases goods were sold upon a credit which was fixed at the time of the purchase ; in other cases goods were ordered generally and upon a statement of account ; after some period a credit was agreed upon, and notes were given for the time which was then fixed. In some cases, upon the falling due of the notes at the expiration of the first credit they seem to have been renewed. The purchases were made under credits fixed in all of these ways. It may possibly be that a course of dealing between Cochran, McLean & Co. and Mr. Sabin might ripen into an agreement between the parties as to terms of credit, and purchases under such circumstances might be covered by the guarantee ; but it is clear that in the case of renewals of notes which fell due, or at the expiration of the term of credit agreed upon, the guarantor was released.

It is urged in answer to this proposition that there was some agreement between Sabin and Cochran, McLean & Co. for a renewal of such notes as they could not meet at maturity. I am unable to see how any agreement of that kind was authorized by the terms of the guarantee. The language of the guarantee is explicit that the time of credit must be agreed upon between Sabin and Cochran, McLean & Co. : that means a time certain, definite and fixed, not an uncertain, indefinite period in the dim future. The protection which the having the length of the credit fixed, at the time of the purchase or before the purchase, afforded to the defendant, was that he would have notice at once of any failure upon the part of the purchasers of the goods to pay for the same at maturity, and he would then be put upon his guard, and he might be able to protect himself for the liability at the time incurred.

But, if the construction which is claimed upon the part of the plaintiffs based upon that portion of the guarantee be correct, then the guarantor, no matter how lax the purchasers might be in their payments ; no matter how far they might be in arrear ; how often they might allow their bills to go to protest ; yet if there was an indefinite agreement between Sabin and Cochran, McLean & Co. that these bills should be renewed, the guarantor need have no knowledge of the facts which were

Cochran *v.* Kennedy.

transpiring and which would necessarily excite his suspicion and alarm.

It is urged upon the part of the respondents that the language of the guarantee must be most strictly construed against the guarantor. That might be very true if this guarantee had been drawn up and presented by the guarantor, or the persons for whom he was giving the guarantee, to the plaintiffs in this action, but I fail to see that any such rule of construction applies to a contract drawn up by the plaintiffs and submitted to the defendant for his signature. The language of the case which is referred to upon the respondent's points, that it does not lie in the mouth of the guarantor to say that he may without peril scatter ambiguous words by which the other party is misled to his injury, does not apply to the case at bar. If there is in this case any ambiguity in the guarantee it does not lie at the defendant's door, but must be borne by the plaintiffs—the instrument in question being their own production. But there is no ambiguity in respect to the point which is now under discussion. The guarantee is certain and fixed in its terms, and those terms must be complied with or the guarantor is released. The evidence in this case shows without dispute that notes have been renewed after they were fallen due, that credits have been extended, and certainly to such an extent the guarantor has been released.

We, at first, endeavored to separate the purchases which would come under the rule to which we have called attention and as to which the guarantor was released, from the evidence as it is now presented to the court, with the view of providing for the reduction of the judgment, but it seemed to be impossible to do so; and undoubtedly the parties should be heard upon these particular points before any decision should be rendered thereon.

The judgment must, therefore, be reversed and a new trial ordered, with costs to abide the event.

BEACH, J., concurred.

Judgment reversed and new trial ordered, with costs to abide event.