(9 App. Div. 316.)

SHIPMAN et al. v. KELLEY.

(Supreme Court, Appellate Division, Fourth Department. October 16, 1896.)

1. GUARANTY—CONSTRUCTION.

A guaranty of "payment for all bills for coal shipped" to a certain person "to the amount of $1,500 per month," with further provision that "the undertaking * * * is that at no time shall there be standing more than three months' shipment of coal," is not limited to shipments for three months, but merely to an amount not exceeding at any time $4,500.

2. SAME—RELEASE OF GUARANTOR—EXTENDING TIME OF PAYMENT.

A negotiable note for the price of goods, taken from the buyer at the expiration of the term of credit without the assent of the guarantor, is an extension of the time of payment, and releases the guarantor.

Appeal from trial term, Erie county.

Action by Chauncey N. Shipman and others against Thomas Kelley. The complaint was dismissed (38 N. Y. Supp. 597), and plaintiffs appeal. Affirmed.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, GREEN, and WARD, JJ.

Frank Gibbons, for appellants.

F. E. Stone, for respondent.

ADAMS, J. In the year 1894, the plaintiffs, who were co-partners, were engaged in business at the city of Buffalo, in this state, as whole-

sale dealers in coal, and the firm f Harwood & Irish were engaged in selling the same commodity at retail at the village of Skaneateles. In order that the last-mentioned firm might obtain credit of the plaintiffs for such coal as it might purchase of them, the defendant, on the 25th of January, 1894, executed and delivered to the plaintiffs his certain instrument in writing, of which the following is a copy:

"Skaneateles, N. Y., Jan. 25, 1894.

"For a valuable consideration, I hereby guaranty to C. N. Shipman & Co. the payment for all bills for coal shipped to said Harwood & Irish at Skaneateles, N. Y., by C. N. Shipman & Co., to the amount of fifteen hundred dollars per month. The understanding between all the parties is that at no time shall there be standing more than three months' shipment of coal.

"T. Kelley.

"Witness: Miles S. Irish."

Thereafter, and at different times between the date of such instrument and May 15, 1894, the plaintiffs sold coal to the firm of Harwood & Irish, upon credit, and in reliance upon the security furnished by the defendant's guaranty of payment. Upon the last-mentioned date there appears to have been due the plaintiffs upon account of coal so sold the sum of $970.74, for which sum the firm of Harwood & Irish gave its notes, payable at different dates; and upon the notes thus given payments were made from time to time which were sufficient in amount to reduce the notes to $760.43, and upon the 21st day of September, 1894, a note for this last-mentioned sum was given, which became due on the 8th of November following. This note was accepted by the plaintiffs, and at its maturity a payment was made thereon, which reduced the indebtedness to $500, for which balance two new notes were given by the firm and accepted by the plaintiffs of $250 each, one of which was made payable in twenty days and the other in one month. Upon the 3d of December, 1894, $100 was paid upon the first note, and a new note for $150, payable in 15 days, was given and received, which last-mentioned note was subsequently paid in full. Upon the maturity of the second note of $250, a payment of $50 was made, and a new note given and accepted for $200, which matured January 14, 1895, when it was taken up, and another note for the same amount was given and received in the place thereof. This last-mentioned note was made payable to the order of the plaintiffs in one month from the date thereof, with interest, but has never been paid; and it is to recover the amount due thereon that this action is brought. When this note fell due, the plaintiffs drew upon the makers, Harwood & Irish, for the amount thereof, at three days' sight, through the Bank of Skaneateles, which draft was accepted, but never paid by the drawees. Upon the trial of the action, the foregoing, together with certain other facts, were stipulated by the parties, the additional facts, so far as they are material to the questions presented, being that the defendant did not consent to, and was not aware of, the giving of the notes and draft above mentioned; that no money consideration was paid for such extension of payment as was accomplished by their execution and delivery; that upon the 11th of March, 1895, the firm of Harwood & Irish became insolvent, and made a general assignment for the benefit of their creditors; and that no request was ever made of the plaintiffs by the

defendant to enforce collection of their claim against such firm. It is now insisted, as it was successfully contended at the trial, that these facts constitute a perfect defense to the claim in suit; and the grounds upon which this contention is based are (1) that this guaranty is limited in express terms to $1,500 per month for three months; and (2) that in the giving of the notes and draft above mentioned by Harwood & Irish, without the consent of the defendant, the time of payment of the debt evidenced thereby was so extended and postponed as to release the defendant from any liability under his contract of guaranty.

So far as the first of these two provisions is concerned, there is but little, if any, necessity, in our opinion, for extended discussion. The language of the contract under which the plaintiffs seek to establish the defendant's liability is neither vague nor ambiguous, for, after expressing his agreement to stand sponsor for the firm in plain and comprehensive terms, an explanatory clause is added, which expressly provides that at no time shall there be standing more than three months' shipments of coal. Now, while the agreed facts do not show precisely upon what terms of payment the coal in question was sold to Harwood & Irish, they do tend, unmistakably, to prove that each month's delivery was to be paid at the expiration of the month, and, this being so, it becomes perfectly clear that the "understanding" referred to was that the defendant's contract of guaranty was, by express limitation, not to extend, at any one time, beyond the amount due for three months' delivery of coal, or $4,500 in the aggregate. Given this construction, we fail to see any force in the defendant's contention that the contract had been violated, for the amount claimed in this action is but a fraction of the balance due for coal delivered in the months of April and May, 1894, the total amount of sales for those months falling far short of the maximum sum of the defendant's liability, viz. $1,500. The trial court apparently was not favorably impressed with this branch of the defendant's contention,, for its conclusions of law are all based upon the idea that by accepting the individual obligations of Harwood & Irish the plaintiffs released the defendant from all further liability upon his contract of guaranty, and we therefore turn to that as the crucial question in the case.

In considering this question, it is important to determine, if possible, what term of credit was within the contemplation of the defendant when he undertook to become responsible for the coal purchased by Harwood & Irish, and then to what extent, if at all, that term has been extended, without the defendant's knowledge or consent; and in this connection it may be noted as a somewhat curious fact that in his answer to the plaintiffs' complaint the defendant undertakes to set forth an exact copy of his agreement, which is there made to read as follows:

"January 25, 1894.

"Mess. C. N. Shipman & Co., Buffalo, N. Y.: This is to certify that I will guaranty the payment of all coal sold to Harwood & Irish by you to the amount of fifteen hundred dollars per month, and what notes it may be necessary for them to make for monthly balances.

"[Signed]     T. Kelley."

This contract, it will be observed, varies quite materially from the one which appears in the facts stipulated, in that the defendant guaranties not only the payment by Harwood & Irish for coal sold to them to the extent of $1,500 per month, but also "what notes it may be necessary for them to make for monthly balances." Had the defendant elected to stand upon the contract as thus expressed, the case would have been relieved of any embarrassment, as it would then have come directly within the principle laid down by the court of appeals in Railroad Co. v. Burkard, 114 N. Y. 197, 21 N. E. 156. But, inasmuch as the parties thereafter agreed that the contract did not contain the words last quoted, it becomes necessary to dispose of the question from a somewhat different point of view. In our endeavor, therefore, to determine the term of credit which was within the contemplation of the parties when the contract was signed, it may be assumed, we think, that the defendant did understand and expect that the plaintiffs were to give some credit to Harwood & Irish, for, had this not been the case, there would have been no occasion for the guaranty, nor any reason for limiting it to three months' delivery of coal; but at the same time there is nothing in the language of the contract itself which will warrant the inference that the defendant either assented to or contemplated any extension of credit beyond such as it is the usual custom to grant in transactions of this character. Our inquiry is consequently limited to the single question of whether or not the plaintiffs have consented to any alteration of the original contract; for, if they have, then the defendant is released from his contract of suretyship, even though such alteration may not have operated to his injury, inasmuch as his obligation is strictissimi juris. Page v. Krekey, 137 N. Y. 307, 33 N. E. 311; Wilson v. Whitmore, 92 Hun, 466, 36 N. Y. Supp. 550. As has already been stated, one of the conceded facts in this case is that at the expiration of the term of credit which was given upon the original purchase the indebtedness of Harwood & Irish was provided for by their notes, which were renewed from time to time as they matured, until the note in suit was finally given for the balance which remained unpaid. It is not claimed that these notes, in the absence of an express agreement to that effect, either merged or extinguished the original indebtedness; but it is contended that they did postpone the day of payment, and therefore discharged the surety from any obligation he might be under to pay the debt. In this connection it is proper once more to observe that, if the question under consideration is to be disposed of upon the admissions contained in the pleadings, instead of upon the facts agreed upon, the plaintiffs would probably find themselves concluded by the averment in their complaint that this very note "was given in payment of said balance of $200 for the purchase price of the coal hereinbefore mentioned." But, inasmuch as the defendant's counsel apparently lays no stress upon this admission, but rather relies upon the stipulated facts, it may perhaps be regarded as deprived of the force which it would otherwise possess, and we pass, therefore, to a consideration of the question already adverted to.

The authorities are numerous which hold that the mere acceptance

of the promissory note of the principal debtor for a pre-existing debt operates, in the absence of an agreement that such shall not be the effect, as an extension of time, and suspends the right of action upon the debt until the note becomes due.     Samuell v. Howarth, 3 Mer. 272; Fellows v. Prentiss, 3 Denio, 512; Myers v. Welles, 5 Hill, 465; Putnam v. Lewis, 8 Johns. 389; Bangs v. Mosher, 23 Barb. 478; Dorlon v. Christie, 39 Barb. 610; Place v. McIlvain, 38 N. Y. 96; Happy v. Mosher, 48 N. Y. 313; Hubbard v. Gurney, 64 N. Y. 457–467.     And we should hardly regard the question as an open one, were it not for some recent decisions, which it is insisted are in conflict with those already cited, and which tend to establish a contrary doctrine.     Denick v. Hubbard, 27 Hun, 347; Graham v. Negus, 55 Hun, 440, 8 N. Y. Supp. 679; Fuller v. Negus (Sup.) 8 N. Y. Supp. 681.     But, after a careful reading of the decisions last cited, it seems to us quite clear that they do not go beyond the extent of holding that a mere, naked promise to postpone the payment of a debt, whether the same be in writing or only verbal, does not suspend the right of action upon the original indebtedness, for the reason that there is no new consideration to sustain such a promise. And if we are correct in our assumption that this is the proposition sought to be established, we are not prepared to dispute it, providing, however, that the new promise be of such a character that no one is affected thereby but the original debtor and creditor.     Nor should we regard such a proposition as against the weight of authority, for it is undoubtedly true that, if the plaintiffs in this action had simply promised Harwood & Irish that they might have additional time in which to pay the balance due upon their purchase of coal, they would have been at liberty to disregard their promise immediately after making the same, and to bring an action upon the original debt. And if such promise had been made in writing, and put in the form of a nonnegotiable promissory note, we fail to see how that would change the relation of the parties, or prevent the plaintiffs, upon tendering the note, from maintaining an action upon the debt.     But in this case it appears that the note was made payable to the order of the plaintiffs, and it was, therefore, negotiable, and the relation of the parties was thereby changed, for the plaintiffs became possessed of a piece of commercial paper, upon which they might have realized money at any time before its maturity, and to that end might have transferred it to a third party, thereby putting it beyond their power to prosecute the debt themselves, and beyond the power of the defendant to compel its prosecution until the maturity of the note, before which time it appears that Harwood & Irish had become insolvent, and, consequently, neither the debt nor the note was capable of collection.     We conclude, therefore, that the advantages which the plaintiffs obtained by accepting the note of their debtor constituted of themselves sufficient consideration to sustain the extension of time, and operated to suspend their right of action upon their original debt; and such note was consequently a new and valid contract entered into between the creditors and their debtors, which, inasmuch as the defendant did not in any manner assent to its execution, had the effect to release him from any liability as surety

to the original contract.    Gahn v. Niemcewicz, 11 Wend. 312; Low-
man v. Yates, 37 N. Y. 601; Powers v. Silberstein, 108 N. Y. 169, 15
N. E. 185.    Having reached this conclusion, we do not deem it nec-
essary to consider the effect of the draft drawn by the plaintiffs upon
their debtors, Harwood & Irish, and therefore we do not pass upon
that question, preferring to rest our decision upon the proposition
first discussed.

The judgment appealed from should be affirmed, with costs.

HARDIN, P. J., concurs.

WARD, J. (concurring).    The plaintiffs were coal dealers in the
city of Buffalo in the year 1894, and Harwood & Irish were a firm
engaged in the same business at the village of Skaneateles, N. Y.
This latter firm desired to obtain credit with the plaintiffs in the
purchase of coal, and for the purpose of creating such credit the de-
fendant executed and delivered to the plaintiffs the following instru-
ment in writing:

"Skaneateles, N. Y., Jan. 25, 1894.

"For a valuable consideration, I hereby guaranty to C. N. Shipman & Co.
the payment for all bills for coal shipped to said Harwood & Irish, at
Skaneateles, N. Y., by C. N. Shipman & Co., to the amount of fifteen hundred
dollars per month. The understanding between all the parties is that at no
time shall there be standing more than three months' shipment of coal.

"T. Kelley."

The action went to trial upon an agreed case stipulated in the evi-
dence, from which it appears:

"That at different times between the 13th day of April, 1894, and the 15th
day of May, 1894, both inclusive, the said plaintiffs did sell to the said Har-
wood & Irish coal to the amount and value of $970.74, which sum the said
Harwood & Irish agreed to pay therefor, but have wholly neglected to do so,
except that they have paid to apply thereon, from time to time, sums amount-
ing in all to the sum of $770.74, being in shape of notes given and paid as
hereinafter stated, leaving a balance still due and unpaid of $200, for which
said Harwood & Irish thereafter, and on or about the 14th day of January,
1895, made and executed their certain promissory note in writing for the sum
of $200, payable in one month from the date thereof, with interest, and de-
livered the same to these plaintiffs, to whose order said note was made paya-
ble, and which is now past due. * * * That said sum of $970.74 was the
last monthly balance of coal sold and delivered by the plaintiffs to the said
Harwood & Irish, and that no transactions for the sale of coal had been had
between the parties since that time, and that said sum of $970.74 was actually
due on said 15th day of May, 1894, and before any of the notes hereinafter
mentioned were given. * * * That on the 23d day of June, 1894, notes of
different amounts were given by the said Harwood & Irish, accepted by the
plaintiffs, for the sum of $970.74, which notes were payable at different times,
and that there had been paid on said notes sufficient to reduce the sum, on the
21st day of September, 1894, to $760.43, at which time a new note for the
said sum of $760.43, due November 8, 1894, was given and accepted, and that
on the last-named date there was paid on said balance $260.43 and interest
to that date; whereupon said Harwood & Irish gave two new notes to the
plaintiffs, which were accepted by them, each being dated November 8, 1894,
one being for the sum of $250, due in twenty days, and one for $250, due in
one month. On December 3, 1894, $100 was paid on the first note of $250, and
a new note given and accepted for $150, for fifteen days, which note was paid
on January 8, 1895. Said second note of $250 was due September 10, 1894,
and on that day $50 was paid thereon, and a new note given and accepted

for $200, which was due January 14, 1895; and when said note became due, to wit, on the 14th day of January, 1895, the same was taken up by the said Harwood & Irish, and a new note given and accepted in the place thereof, for the sum of $200, due in one month from the date thereof, which has never been paid, and which is the same note mentioned in the complaint in this action. That after said note became due, to wit, on the 25th day of February, 1895, said plaintiffs drew a draft on the said Harwood & Irish, through the Bank of Skaneateles, wherein they requested the said Harwood & Irish to pay the said sum of $200 and interest at three days' sight, which said draft said Harwood & Irish accepted on February 27, 1895, but which they have never paid. That the defendant had no knowledge of the notes given and accepted as aforesaid, or of the part payments thereon, or of the giving of new notes for the balance; and the defendant had never requested that the plaintiffs enforce collection of the said account or notes against the said Harwood & Irish and never consented to giving or receiving of any of said notes. * * * That nothing was ever paid the plaintiffs by the said Harwood & Irish, or any other persons for them, for granting any extension of time of payment of any of the notes mentioned, or of the debt represented thereby."

It was further admitted that on the 11th day of March, 1895, Harwood & Irish made a general assignment for the benefit of their creditors, and that they were insolvent, and that no action had at any time been brought against the said Harwood & Irish by the plaintiffs upon any of the said notes or debts represented thereby.

The complaint in the action was upon the guaranty of the defendant above set forth, alleging the sale of the coal, and contained this averment:

"That thereafter, and on the 14th day of January, 1895, the said Harwood & Irish made and executed their certain promissory note, in writing, for the sum of $200, payable in one month from the date thereof, with interest, and delivered the same to these plaintiffs, to whose order the said note was made payable; that said note was given in payment of said balance of $200 for the purchase price of the coal hereinbefore mentioned; that said note and the debt secured thereby is now past due and payable; that the plaintiffs are now the lawful owners and holders thereof; and that no part of the same, or of the said balance of the purchase price of said coal, has been paid. And judgment was demanded for the amount of the note and interest."

The defendant's answer admitted the signing the instrument of guaranty, and alleged by way of defense that the plaintiffs had, without the knowledge or consent of the defendant, repeatedly postponed and extended by agreements between the said plaintiffs and Harwood & Irish and had on various occasions from time to time extended the payment of said sums, or a part thereof, by receiving and accepting notes and drafts from said Harwood & Irish unknown to defendant, in payment of the whole or a part thereof, due at some future time, and had at divers times accepted part payment of said notes and account, agreeing therefor to extend further the payment of a part thereof, and had wrongfully neglected and postponed the collection of the amount so due from Harwood & Irish, well knowing their financial condition, until they became wholly insolvent,—all of which was done without the knowledge or consent of the defendant. The learned trial court found the facts as stipulated upon the trial as above set forth, and, as conclusions of law therefrom, that the defendant was discharged from all obligation as the surety of Harwood & Irish, and dismissed the complaint upon the merits.

The appellants here contend that the conclusions of the trial court were erroneous, and the defendant was not discharged, for the rea-

sons: First, that by the terms of the guaranty signed by the defendant, fairly construed, no limit is created upon the time of credit which might be given to Harwood & Irish, and therefore the extension of such payment by note or otherwise, as appears in the evidence, was within the contemplation and permission of the guaranty. Second, that the transactions of giving the notes, draft, part payments, as above stated did not in law extend the time of payment of debt for the coal, as there was no consideration for such extension, and that the original indebtedness remained unimpaired by these transactions, and could have been enforced at any time by the plaintiffs against Harwood & Irish. It is difficult to see how either of these contentions can prevail. The guaranty limited the credit in the first place to $1,500 per month, with the further limitation of three months as the final period of credit; making the total credit $4,500, that should not be exceeded at any one time. No authority was given by this guaranty to the plaintiffs to give extended credit, and at the expiration of such credit to again extend, and extend thereafter repeatedly, as appears to have been the case under the instrument of guaranty passed upon in Railroad Co. v. Burkard, 114 N. Y. 197, 21 N. E. 156, and no such power will be inferred. The liability of a surety is limited to the express terms of his contract. His obligations, so far as warranted by the terms employed, should be construed strictly and favorably to him. Ward v. Stahl, 81 N. Y. 406, opinion 408. This was simply a guaranty to pay the plaintiffs for the coal upon sale within the limitations aforesaid. No authority to the plaintiffs can be inferred from this instrument to extend the payment of a debt for coal that has once become due; consequently, if there is a valid extension of time of payment between the plaintiffs (the creditors) and Harwood & Irish (the debtors) without the consent of the defendant (the guarantor) and surety, then the surety is discharged. The evidence sets at rest the question (which the court finds as a fact) that the amount sought to be recovered in this action for coal sold became due and payable on the 15th of May, 1894. After its becoming so due, as we have seen, the term of credit is extended from time to time by the debtor giving and the plaintiffs accepting promissory notes, and part payment at the time such notes are given, and thereby extending the time of payment from May 15, 1894, until the maturity of the note on the 25th of February, 1895, and the further extension of several days by the reason of the draft at three days' sight accepted February 27, 1895. It would seem superfluous to argue that, in view of the allegation in the complaint that the $200 was received in payment of the balance due for the coal by the plaintiffs from Harwood & Irish, and of the conceded transactions by way of extensions of payment by means of notes, the draft, and part payments, the time of payment for the amount claimed in this action had not been legally extended for nearly a year after the debt guarantied had become due, without the consent of the surety.

It is said in Halliday v. Hart, 30 N. Y., at page 488:

"It was formerly held that any absolute and distinct agreement to give the acceptor time was considered as discharging the drawer and indorsers of a

bill of exchange, without any distinction whether or not such agreement was founded on a sufficient consideration to bind the party making it, because at least the acceptor, relying on the honor of the party making it, and that he would abide by it, would naturally relax in his endeavors to pay the bill before the enlarged time, in the meantime might pay less accommodating holders [citing Chit. Bills (9th Am. Ed.) p. 466, and cases cited]; but the same author observes that of late a distinction has been taken, and a new doctrine has sprung up and been acted upon, namely, that even an express agreement not to sue, made after giving notice of nonpayment, but without sufficient consideration, and without taking any new securities, being nudum pactum, will not discharge the other parties; and several authorities are cited to sustain this proposition," etc. .

2 Daniel, Neg. Inst. (3d Ed.) § 1312, p. 329, states the law thus:

"If the debtor takes a time draft, or renews a note from the principal, the presumption is that the right of action is suspended, and time of payment extended to its maturity; and an indorser of the original bill or note is thereby presumptively discharged."

And in defining what is a sufficient consideration for such extension, at section 1317b, p. 333, this authority states, in effect, that a part payment upon the original note with a new note given for the balance is a sufficient consideration; and this doctrine is well supported by authority.

In Hubbard v. Gurney, 64 N. Y. 457, opinion 466, 467, where a new note was given, and a small payment made upon the old note that had been signed by the surety, it was held that such new note and payment was a sufficient consideration to support the agreement extending the time of payment; and the court says, at page 466:

"The principle is well settled that where the holder of a promissory note takes a new note from the debtor, payable at a future day, he suspends the right of action upon the original demand until the maturity of the last-mentioned note; and the surety upon the same, not assenting thereto, thereby becomes discharged from liability."

—Citing numerous authorities. And this, the court says, is so, notwithstanding the fact that the original note is not surrendered or given up. From these facts the court says, at page 467:

"When this note became due, a small payment was made, and a new note given for thirty days, upon which $200 was afterwards paid, leaving a balance of $700 unpaid. It is quite obvious that here was an implied agreement by which the time of payment of the original note was extended, and, this being done without the knowledge of or assent of the defendant, who was a surety, his rights were thereby affected."

In the case at bar the trial court found (all questions of fact being left to it) that there was, from the facts in this case, such an implied agreement, and it is difficult to see how any other inference could be drawn from the evidence. In Schnitzler v. Bank (Kan. App.) 42 Pac. 496, it was held that taking a renewal note and interest thereon is an extension of time of payment of the old note, and discharges the surety. The reason of the rule relieving the surety is this: The surety, by his contract, is entitled, as soon as the debt which he secures is due, to pay it, and be subrogated to the rights of the creditor to collect the debt of the debtor. If the creditor, by extending the time of the payment of the debt, deprives the surety, during the extended period, of this right, the surety is discharged,

no matter how brief is the period of extension; and this is so whether the debt during the extended period becomes uncollectible in whole or in part or otherwise. It is clear that the facts established in this case and found by the court created a valid extension of the payment of the debt from time to time for a period of nearly a year, and until the debtors primarily liable for the coal sold had become insolvent. Many cases may be cited in support of this position in addition to those already referred to, and among them are the following: Pomeroy v. Tanner, 70 N. Y. 547; Iron Co. v. Walker, 76 N. Y. 521; Bank v. Phelps, 86 N. Y. 484; Kane v. Cortesy, 100 N. Y. 132, 2 N. E. 874.

In Jaffray v. Crane, 50 Wis. 349, 7 N. W. 300, a note for part of a debt taken in satisfaction was held to discharge a surety. In Putnam v. Lewis, 8 Johns. 389, it was held that the giving of a promissory note for a book debt suspends the right of action on the book account during the time allowed for the payment by the note. In Fellows v. Prentiss, 3 Denio, 512, there had been a guaranty to pay for goods, as in the case at bar, and it was there held that, if a principal debtor gave the creditor his note for the debt, payble one day after date, the surety was thereby discharged. This was a case in the court of errors, and the rule laid down by that court was clearly in accordance with the respondent's contention here. In Myers v. Welles, 5 Hill, 463, the old supreme court, through Cowen, J., where A. was the indorser for the accommodation of the maker, and a note was given for the debt subsequently without consent of the indorser, it was held he was discharged; that the giving of such note suspended the remedy as against the debtor.

The American & English Encyclopedia of Law sums up the whole matter in volume 24, at pages 833 and 835, as follows:

"Where there is a novation of the debt by the acceptance of a new note for an extended period, which will prevent the creditor from suing on the first obligation, the surety will be discharged. It has been held that the mere fact that a creditor takes a note after the maturity of the original debt raises no implication in law that he agrees to give time for the payment of the original debt, and that the agreement to give time must be proved as a fact. But the weight of authority holds the surety discharged by the mere acceptance of such a note."

—And then refers to note 2, commencing on page 835, giving a large number of cases sustaining the latter proposition, including the New York cases just cited and Hubbard v. Gurney, supra.

The appellant relies upon Parmelee v. Thompson, 45 N. Y. 58, Bank v. Hunsiker, 72 N. Y. 252, and upon two cases decided by the general term of the First department, and reported in 8 N. Y. Supp. 679 and 681, being Graham v. Negus and Fuller v. Negus, where goods were sold, and, after the purchase price thereof had become due, the debtors' notes were given upon time. In these Negus Cases Judge Daniels says that no agreement on the part of the plaintiffs to extend the time for the payment of the debt until the note should mature was alleged in the answer, but it stood wholly and solely upon the fact that the notes themselves, being in this manner given, did extend the time for the payment of the indebtedness until they respectively matured. An examination of

these cases discloses such a different state of facts from the one at bar that they cannot be said to be authority applicable to this case. In those cases no agreement was shown that the time of payment should be extended by the giving of the notes, and the court held that none could be inferred from the bare circumstance that notes had been given and accepted, payable at a future day, for a pre-existing debt. We cannot conclude that the general term of the First department in these decisions assumed to overrule the law as settled by a long line of authorities upon this subject in the courts of this state, including the court of appeals.

The case in 45 N. Y., supra, was where an action upon a note was discontinued, and the costs paid by the defendant upon a parol arrangement that the defendant should pay the costs, the suit be discontinued, and the debtor have time during the next month to pay the note. Here no new security was given, and the defendant, in paying the costs, only paid what he was liable to pay before he made the arrangement. In 72 N. Y., supra, there were renewal notes accepted by the creditors (the banks) conditionally, dependent upon the consent of the sureties, which was never obtained; and there was a question of fact in the case as to whether the renewal was absolute or conditional, and the court refused to interfere with the finding of the jury upon that subject. In none of the cases relied upon by the plaintiff was the right of a surety involved.

The view here taken does not in any manner conflict with the doctrine asserted in Halliday v. Hart, 30 N. Y. 477, and kindred cases cited in Manchester v. Van Brunt (City Ct. N. Y.) 19 N. Y. Supp. 685, 687, that a part payment of the matured debt, even if accompanied with a verbal agreement for time, does not constitute a sufficient consideration to support such an agreement; but the proposition is here asserted that, where such agreement and part payment is accompanied by a new security extending such time of payment, it is valid and binding, and discharges the surety. The law is well settled that where a new obligation is given in payment of a debt, the debt is canceled, and the creditor must rely upon the new obligation alone. As we have seen, the complaint in this case alleges that the last note given of $200, the amount of which is sought to be recovered in this action, was given in payment of the balance due from Harwood & Irish upon the coal they had purchased of the plaintiffs. The plaintiffs cannot avoid the force of this allegation in their complaint. Independent of any other question in the case, we must hold that, the plaintiffs having received this note in payment of the balance due for the coal, that debt was discharged, and that discharge relieves the defendant absolutely, as the debt which he guarantied is paid; and, while the plaintiffs have a good cause of action upon the note against Harwood & Irish, they have none against the defendant.

The judgment in this action should be affirmed, with costs.

GREEN, J. (concurring). The guaranty is dated January 25, 1894: "I hereby guaranty * * * the payment for all bills for coal shipped to * * * to the amount of $1,500 per month. The understanding between all

the parties is that at no time shall there be standing more than three months' shipment of coal."

At different times between April 13 and May 15, 1894, plaintiffs sold and delivered to Harwood & Irish coal to the amount of $970.74, which was the last monthly balance of coal sold and delivered to them, and no further shipments of coal were ever made. On June 23, 1894, notes of different amounts were given by Harwood & Irish, for the sum of $970.74, which notes were payable at different times. On the 21st of September, 1894, the amount had been reduced by payments to $760.43, at which time a new note was given for that amount, payable November 8, 1894, when there was paid on the note $260.43 and interest to that date. Thereupon Harwood & Irish gave two new notes; one for $250, payable in twenty days, and the other for the same amount, payable in one month. On December 3d $100 was paid on the first note, and a new note given for $150, payable in 15 days, and was paid on January 8, 1895. When the second note became due, and on December 10, 1894, $50 was paid thereon, and a new note given for $200, payable January 14, 1895, when another note was given for the same amount, payable in one month. This note not having been paid at maturity, the plaintiffs, on the 25th of February, 1895, drew a draft on Harwood & Irish for that amount, payable at three days' sight, but this draft was never paid. Thereupon the plaintiffs brought this action against the guarantor for the recovery of the amount due.

It may be assumed that the notes executed June 23, 1894, were impliedly authorized by the guaranty, but it does not follow that the successive notes were within the contemplation of the guarantor. No doubt a period of credit was contemplated, but when the parties fixed the time for payment, and the debtor defaulted in payment, in whole or in part, the plaintiff was not justified or warranted by anything expressed in the guaranty to further extend the period from time to time, and suspend his right to enforce payment, without the assent of the guarantor. During these suspensions the guarantor was prevented from proceeding against the principal upon payment of the debt, nor could he compel the plaintiffs to proceed. In view of the authorities hereafter quoted, it seems that the guarantor must be held discharged, because the extensions of credit were not fair and reasonable, as to him, in point of law and equity, though as a matter of fact it may have been otherwise. This is not only the law, but it is also justice and equity; at least courts of equity say it is, though there is every reason to believe otherwise in this case. What is "giving time" was thus defined by the court in Howell v. Jones, 1 Cromp., M. & R. 107, in the following terms:

"We think it means extending the period at which, by the contract between them, the principal debtor was originally liable to pay the creditor, and extending it by a new and valid contract between the creditor and the principal debtor, to which the surety does not assent."

Although the general meaning of the expression "giving time" is thus defined, it is sometimes difficult to say what really was "the period at which, by the contract between them, the principal debtor was originally liable to pay the creditor." This sometimes has to

be ascertained from the terms of the original contract between them. And in such cases the words used must have a reasonable interpretation. Thus, in Simpson v. Manley, 2 Cromp. & J. 12, a guaranty ran as follows:

" 'If you give A. B. credit, we will be responsible that his payments shall be regularly made.' The question having arisen whether there had been a giving of time to A. B., it became necessary to decide when A. B. was, under these terms, bound to pay the creditor. The court held that the word 'credit' meant a fair and reasonable credit, according to the manner in which A. B. and the persons guarantied should deal, and did not confine the guaranty to dealings according to the strict, customary credit of trade."

Custom of trade cannot enlarge the express words of the guaranty. See Holl v. Hadley, 5 Bing. 54.

In Combe v. Woolf, 8 Bing. 156, defendant guarantied the payment of porter to be delivered by plaintiff to J., the guaranty containing no stipulation as to the credit to be given to J. The custom of the trade was to give six months, and then, sometimes, to take a bill at two. The plaintiffs having, without the knowledge of the defendant, given J. eleven months' credit, the defendant was held discharged from his guaranty.   Tindal, C. J., said:

"The plaintiffs allow three months to elapse after the six, and are then paid by a note at two, thus virtually giving a credit of eleven months; and this, not as a matter of favor which they might afterwards repudiate, but as a right on which Joseph might insist, for, after the receipt of the note, payment could no longer be demanded till it had run its time. Although no specific time of payment is fixed by the guaranty, yet it must be implied that the guaranty was given on the supposition that the debtor would not have more than the usual credit. But how, it is said, is the situation of the surety altered by this? At the end of eight months he had a right to inquire whether the debt had been discharged, and, if he found it still due, to take his measures against the debtor accordingly; whereas, if the creditor could, without his assent, extend the credit to an unlimited time, the surety might be discharged of all remedy by the subsequent insolvency of the debtor."

Park, J., remarked that there was a positive prevention of any suit by the principal creditor, for when he had tied up his own hands for months the surety could make no claim at the expiration of the usual time; and it is by the risk that the debtor may become insolvent in the intermediate time that the surety is injured.   Bosanquet, J., observed that:

"Although the surety has not stipulated for any particular credit, the course of dealing between the plaintiffs and their debtor was altered, and the usual time of credit extended. It is admitted that the surety could not be sued during the time of the extended credit, which has been given without any notice to him; but it is contended that his liability revives after the extended credit has expired. But how is the claim against the surety supposed to be extended? Not by agreement between the parties, but by operation of law. In other words, if an action were brought against him during the extended time, the indulgence given would be a bar to the action. If, however, it would, under such circumstances, be a bar at any time, it is a bar forever."

—Referred to as authority in Hunt v. Smith, 17 Wend. 179.

In Samuell v. Howarth, 3 Mer. 272, 17 Rev. Reports, 81, defendant guarantied the payment of any goods to be supplied by plaintiff to C. between the 2d of April, 1814, and the 2d of April, 1815.   Although no period of credit was specified, this could not be taken as a guaranty for an unlimited period, but to be restrained by the usual course of

trade; and, C. having accepted bills for the amount of the goods delivered, which plaintiff permitted him to renew when payable, without any communication to defendant on the subject of such renewal, it was held that defendant was discharged, even though the renewal was given only in consequence of C.'s inability to pay, and that no injury could accrue to defendant; the surety being himself the fit judge of what is or is not for his benefit.

In Petty v. Cooke, L. R. 6 Q. B. 794, a very able judge (Blackburn) said:

"I think it impossible to read the principle laid down by Lord Eldon (3 Mer. 272) without thinking that it is based on highly technical reasoning, however accurate it may be. * * * But that time given by a creditor, which in numberless instances does not injure the surety, should discharge him, is to my mind not justice, although established by courts of equity."

The principle and reasoning in Hunt v. Smith, 17 Wend. 179, although not exactly in point, have application to this case, in respect to the renewals of the notes here. There the guaranty did not contemplate a time credit; here a credit for some time was contemplated, and when the time was fixed by the notes of June 23d any further extension could not be given without the assent of the guarantor. See, also, Cochran v. Kennedy, 10 Daly, 346.

Where a guaranty is given to a bank to secure advances on drafts and notes, the guaranty may be construed to apply to successive advances, acceptances, and indorsements which would be renewed and discharged from time to time. The reason why this should be so is stated in Bank v. Hall, 83 N. Y. 343–346. And this is assumed in Bank v. Phelps, 86 N. Y. 484, 491; but there the surety assented to the renewal notes.

The principle is well established by a long series of decisions in this state that the taking of a negotiable bill or note from the debtor, payable on a future day, suspends until then the creditor's right of action for the original debt, and therefore operates, in all cases, as an extension of credit, by which not merely an ordinary surety, but an indorser, not assenting to the transaction, is discharged; that a negotiable note taken from a debtor, even as between the immediate parties, is a conditional satisfaction of the debt which forms its consideration; and that in respect to a surety, whether a guarantor or indorser, whose assent to the transaction is not proved, the satisfaction which it works, and of which it is evidence, is absolute. When a note is given upon an account, or for goods sold, the demand is thereby liquidated, which is a benefit to the creditor; or if, after a note is due, a new note or bill for the amount of the debt is taken from the debtor, payable at a future day, the creditor acquires a negotiable instrument, which may be used more beneficially than a note which is past due; and these considerations constitute a sufficient consideration to support the agreement implied from taking the note. In other language, where a negotiable note, payable at a future time, is taken by the creditor, he receives some benefit or advantage, as he may use the note in the market as commercial paper, and get it discounted at a bank; and any benefit, however small, is sufficient to constitute a consideration. Hart v. Hudson, 6 Duer, 304, 305; Eisner

v. Keller, 3 Daly, 488–494; Platt v. Stark, 2 Hilt. 399; Maier v. Canavan, 8 Daly, 275–277; Tobey v. Barber, 5 Johns. 72 (the court speaks of a note for a "pre-existing debt"); Putnam v. Lewis, 8 Johns. 389; Myers v. Welles, 5 Hill, 463; Fellows v. Prentiss, 3 Denio, 518, 520, 521, 523; Bangs v. Mosher, 23 Barb. 481; Dorlon v. Christie, 39 Barb. 610; Insurance Co. v. Devendorf, 43 Barb. 446; Dodd v. Dreyfus, 17 Hun, 600; Menke v. Gerbracht, 75 Hun, 181, 26 N. Y. Supp. 1097; Pratt v. Coman, 37 N. Y. 443; Place v. McIlvain, 38 N. Y. 96, affirming 1 Daly, 266; Pomeroy v. Tanner, 70 N. Y. 550 (seems to recognize the principle, as it cites cases above, but there was a clear agreement); Bank v. Burns, 46 N. Y. 177; Fleischmann v. Stern, 90 N. Y. 115. Cary v. White, 52 N. Y. 138, is not inconsistent; merely holds that taking collateral security (mortgage) does not, per se, extend payment of debt, and mortgagee is not a purchaser for value within recording acts.    Distinguished in Hubbard v. Gurney, 64 N. Y. 468.

In Hubbard v. Gurney, 64 N. Y. 466–468, Church, C. J., states the general principle as well settled, and then makes this qualification:

"To establish a case, however, within the rule laid down, it is essential that it should be made to appear that there was an agreement, express or implied, from the facts proved, that the new note was taken in payment of the first note, or that the time of payment of the latter was extended in favor of the party who was primarily liable."

He cites many of the cases above, and yet those cases lay down the rule without qualification. It will be observed, from a careful reading, that the court was led to state the rule with this qualification because the plaintiff was contending that the note of the husband was taken, or should be held to have been taken, as collateral security for the original note signed by himself and wife; but the court held that the circumstances indicated clearly that it was the intention to substitute the single note for the joint note, and the plaintiff received the money at the bank.

It may be that the taking of the individual note of the principal debtor, upon default in payment of the prior note signed by the surety, will not, of itself, suspend the right of action on the prior note, or extend the time of payment; that it may be presumed collateral. However that may be, take the case of a debtor giving his note for an existing indebtedness or a liability accrued. Judges Duer and Daly, especially, have clearly shown that the taking of the note operates per se as a suspension of the right of action, and consequently as an extension of time. The law implies an agreement to extend the time, to forbear suing upon the debt, until after the maturity of the note. So, in respect to such a case, the qualification stated cannot apply, for when you prove the giving and receipt of the note you prove the agreement to suspend action and extend time. If you compare the words of the "qualification" with the statement of the rule laid down in Taylor v. Allen, 36 Barb. 297, it will be observed that there is much similarity,—the same substance, though not cited by Judge Church. For in 36 Barb. 297, the rule is stated to be that the receipt of a bill or note does not operate to discharge an indorser on the overdue note, unless there is an agreement, express or implied, extending time of payment. But there

the court was considering whether or not the draft was intended as collateral security, that it became a question for the jury, etc. But this case is criticised and condemned by Judge Daly in Eisner v. Keller, 3 Daly, 488–494. As there can be no question here as to the note being taken as collateral security, that matter is irrelevant and immaterial. But it may be remarked that the qualification to the principle, as stated by Church, J., is not supported by the cases cited, but, on the contrary, is diametrically opposed to the rule there laid down.

In regard to Graham v. Negus, 55 Hun, 440, 8 N. Y. Supp. 679, and Fuller v. Negus (Sup.) 8 N. Y. Supp. 681, it is clear that the rule there stated is inconsistent with the rule as stated in the books since the beginning of the century. According to the same reasoning, every renewal note would be of no legal effect in extending time, unless there was some new consideration. It is impossible to reconcile these cases in principle and reasoning with the ones we have cited. The cases cited by Judge Daniels do not support, and the "expressions" in one of them at least are against him. Fleischmann v. Stern, 90 N. Y. 110, citing Putnam v. Lewis, 8 Johns. 389, and Fellows v. Prentiss, 3 Denio, 518. The New Hampshire case (Moore v. Fitz, 59 N. H. 572) supports Justice Daniels in his decision, but that court decided against the New York authorities which were cited by defendants' counsel, and the court arrayed against him many citations of their own former decisions.

The judgment should be affirmed, with costs.

FOLLETT, J., concurs.