at special term on motion of the attorney summarily fixed the amount, and ordered that it be paid by the defendant. The appellate division held that this could not be done; that the defendant was entitled to a trial of the matter; that the summary method provided for by the last sentence in section 66 of the Code applied only between attorney and client; and that the attorney should have brought a suit instead of a motion. If it also held that the attorney could continue the original action for his own benefit, it no doubt did so on the theory that the settlement was collusive and fraudulent, to cheat him, and that the fund paid to his client was insufficient to satisfy his lien, or could not be reached for that purpose, and that such client was insolvent; for such is the established rule, the defendant standing only in the position of surety toward the plaintiff's attorney in respect of his compensation and his lien therefor. Lee v. Oil Co., 126 N. Y. 579, 27 N. E. 1018; Poole v. Belcha, 131 N. Y. 200, 30 N. E. 53; Peri v. Railroad Co., 152 N. Y. 521, 46 N. E. 849.

The remedy of the plaintiff's attorney here is to begin a suit to foreclose his lien, just as though it were a mechanic's lien, or any other lien; making the plaintiff and the defendant parties defendant. Zimmer v. Railway Co., 65 N. Y. Supp. 977. Their settlement did not destroy his lien. It continued upon the amount or value of the settlement. That is the meaning of the provision in section 66 of the Code already quoted, that such lien "cannot be affected by any settlement between the parties before or after judgment or final order." And it was not necessary that he should have served any notice of his lien; the statute is in and of itself such notice. Peri's Case, supra. In such suit he will get an absolute judgment against his client for the amount he is entitled to, and an alternative judgment against the other defendant that it pay the amount covered by the lien if such amount be not collectible out of the client. Nor is there any practical difficulty beyond what is encountered in other suits every day, about fixing such amount covered by the lien. The attorney had a lien on the cause of action; the cause of action was honestly settled by the parties; by such settlement the cause of action merged or terminated in the amount or value of the consideration agreed upon in settlement, and thus became determined and fixed; and to that amount or value the lien now attaches. If there were no such amount or value, but a settlement for nothing, the lien would be extinct.

The application is denied.

---

BANK OF BUFFALO v. DANZIGER et al.

(Supreme Court, Appellate Division, Fourth Department. July 24, 1900.)

NOTES—GUARANTOR'S DISCHARGE.

 Plaintiff was the holder of several notes executed by S., some of which were guarantied by defendants. The contract of guaranty provided that all of the unguarantied notes held by plaintiff against S. were to be paid by him before any of the guarantied ones, and that "said bank of B. can hold any past-due paper guarantied by the undersigned, without notice to them, and without impairing their liability on account of their guaranty as aforesaid." At the maturity of two of the notes they were

renewed by plaintiff without defendants' knowledge or consent; neither of the renewals, however, extending beyond the date of maturity of the last note. *Held,* that defendants were not discharged by such renewals.

Appeal from judgment on report of referee.

Action by the Bank of Buffalo against Henry Danziger, Nathan Jacobson, Jennie Danziger, Cora T. Danziger, Hiram B. Danziger, and Stella Klopfer, impleaded with Henry L. Schwartz. From a judgment dismissing the complaint on its merits as to all of the defendants except Henry L. Schwartz, entered upon a report of the referee, plaintiff appeals. Reversed.

This action was brought to collect the amount unpaid on certain promissory notes made by one Marcus L. Schwartz, and which it is claimed the defendants are liable to pay, as guarantors, by virtue of the following agreement, which was executed under seal and acknowledged by each of said defendants:

"Whereas the Bank of Buffalo has agreed to discount four notes, each for the sum of $6,750, and each dated July 9, 1897, payable on September 9, 1897, October 9, 1897, December 9, 1897, and March 9, 1898, and each made by Marcus L. Schwartz, of Buffalo, N. Y., to the order of said Bank of Buffalo with interest; and whereas, said promissory notes are to take the place of certain notes now held by Elliott C. McDougall, as trustee for said Bank of Buffalo, Marine Bank, and the Bank of Commerce, amounting to the sum of $27,000, and three of which notes will mature on or about March 9th, 1898, and one of which notes is now past due; and whereas, the payment of the said notes lastly described was guarantied by David Danziger, I. Henry Danziger, and Nathan Jacobson, of Syracuse, N. Y., and Henry L. Schwartz, of Buffalo, N. Y.; and whereas, there is now past due on one of the notes lastly above described; with interest to July 9, 1897, the sum of $2,724.66, which amount has been liquidated by the promissory notes of said Marcus L. Schwartz, payable to the order of the Bank of Buffalo, each dated July 9, 1897, and payable as follows:

| | |
|---|---:|
| August 29, 1897 | $ 724 66 |
| September 25, 1897 | 1,000 00 |
| October 22, 1897 | 500 00 |
| November 25, 1897 | 500 00 |

—And whereas, the said Marcus L. Schwartz is now indebted to the said Bank of Buffalo in the sum of $2,160, for interest due on said notes guarantied as aforesaid, which amount has been liquidated by the promissory notes of said Marcus L. Schwartz, each dated July 9, 1897, payable to the order of the Bank of Buffalo, as follows:

| | |
|---|---|
| $500 | on December 9, 1897 |
| 500 | on January 9, 1898 |
| 500 | on February 9, 1898 |
| 660 | on March 9, 1898 |

—And whereas, said Bank of Buffalo now holds the promissory notes of said Marcus L. Schwartz, as follows:

| | |
|---|---:|
| One note due July 25, 1897 | $ 648 90 |
| One note due July 25, 1897 | 2,791 03 |
| One note due October 28, 1897 | 3,375 76 |

—And whereas, the undersigned have requested said Bank of Buffalo to accept and discount the notes firstly described herein for the benefit of said Marcus L. Schwartz, and in lieu of the notes now held by said Elliott C. McDougall, trustee as aforesaid: Now, therefore, in consideration of the premises, and of the sum of one dollar to each of the undersigned in hand paid, the receipt whereof is hereby acknowledged and confessed, the undersigned, Henry L. Schwartz, of Buffalo, N. Y., and I. Henry Danziger and Nathan Jacobson, of Syracuse, N. Y., and Jennie Danziger, the widow of David Danziger, deceased, and Cora Danziger, Hiram Danziger, and Stella Klopfer, children of said David Danziger, deceased, all residing in Syracuse, N. Y., do hereby covenant, promise, and agree to and with said Bank of Buffalo that they will, and hereby do,

guaranty the payment of said notes firstly herein described, amounting to the sum of $27,000, and discounted by said Bank of Buffalo as aforesaid. The undersigned do further consent that all the other notes hereinbefore described shall be paid by said Marcus L. Schwartz to said Bank of Buffalo before said notes herein guarantied shall be paid by Marcus L. Schwartz or by the undersigned; and the undersigned do hereby agree with said Bank of Buffalo that they will not at any time exact or procure from said Marcus L. Schwartz any security on account of the within guaranty until all the notes herein described, other than those guarantied by the undersigned, shall be fully paid by said Marcus L. Schwartz. It is further agreed, as a part of the within guaranty, that if Henry L. Schwartz shall pay unto the said Bank of Buffalo the sum of $9,000, and interest from date, that he will be relieved of and from any further liability on account of the within guaranty. It is further agreed that in case Nathan Jacobson shall pay unto said Bank of Buffalo the sum of $9,000, and interest from date, that he will be relieved of and from any further liability on account of the within guaranty. It is further agreed that in case I. Henry Danziger shall pay unto said Bank of Buffalo the sum of $4,500, and interest from date, that he will be relieved of and from any further liability on account of the within guaranty. It is further agreed that in case Jennie Danziger, Cora Danziger, Hiram Danziger, and Stella Klopfer shall pay unto said Bank of Buffalo the sum of $4,500, and interest from date, that they will be relieved of and from any further liability on account of the within guaranty. The undersigned do further agree that said Bank of Buffalo can hold any past-due paper guarantied by the undersigned as aforesaid, without notice to them, and without impairing their liability on account of their guaranty as aforesaid. The undersigned do further agree, in case the notes executed by Marcus L. Schwartz for the sum of $2,160, herein referred to and described, representing interest due on notes heretofore guarantied by the undersigned, and held by said Elliott C. McDougall as trustee, shall not be paid by said Marcus L. Schwartz, that the undersigned will, and do hereby, guaranty the payment of said notes, amounting to said sum of $2,160. The said Bank of Buffalo does hereby consent and agree to the terms and conditions of the within instrument. In witness whereof, the parties have hereunto set their hands and seals the day and year first above written." (Here follow the signatures, seals, and the acknowledgments.)

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and LAUGHLIN, JJ.

John G. Milburn, for appellant.

Louis Marshall and Henry Danziger, Jr., for respondents.

SPRING, J. On the 9th day of July, 1897, Elliott C. McDougall held as trustee for the plaintiff and two other banks in the city of Buffalo four promissory notes made by said Marcus L. Schwartz, and aggregating $27,000. One of the said notes was then past due, and the others would not mature until March 9, 1898. The payment of said notes was guarantied by David Danziger, the father of the defendants Jennie, Cora, and Hiram Danziger and Stella Klopfer, and also by the other defendants in this action. The plaintiff also owned the other promissory notes described in the foregoing agreement, and of which said Marcus L. Schwartz was maker. At the request of the defendants in this action said agreement was entered into, and the four notes of $6,750 each were given pursuant thereto by said Marcus L. Schwartz, and delivered to said plaintiff, and discounted by it for the benefit of said maker, and the four notes above referred to were delivered up to him. The first of the said series of notes matured September 9, 1897, and was renewed by another note for a like sum by said maker, and upon its maturity it was again re-

newed by a similar note due in four months. The two notes next in the series were also renewed in like manner, neither extending in date beyond March 9, 1898. The fourth of the said series was paid December 23, 1897, by the defendant Henry L. Schwartz, and these renewals were made without the knowledge or consent of any of the said guarantors. Said plaintiff did not accept said renewal notes in payment of said nine original notes, and the referee has so found as a fact, and decided as matter of law.

That the extension of the time of payment of an obligation for a valuable consideration, without the consent of the surety, releases the latter, is elementary. And this follows, though no injury results from such extension, as the surety is entitled to have his agreement construed strictly, and without substantial change in it. Page v. Krekey, 137 N. Y. 307, 33 N. E. 311, 21 L. R. A. 409; Livingston v. Moore, 15 App. Div. 15, 44 N. Y. Supp. 125. It is also well settled that the acceptance of the interest, as in this case, with the renewal note, constitutes a good consideration for such extension. Hubbard v. Gurney, 64 N. Y. 457; Shipman v. Kelley, 9 App. Div. 316, 41 N. Y. Supp. 328. A construction of the agreement with its attendant facts is essential in ascertaining whether the defendants are compassed by these frequently asserted principles. The many notes which were outstanding against Marcus L. Schwartz, the fact that several were held against him by McDougall as trustee for three banks; and that others were for interest on notes, indicate he was in straitened circumstances at the time the agreement was made. There was an evident purpose on the part of his relatives to give him an opportunity to relieve himself from his tangled financial condition. Paper to the amount of $27,000 was already guarantied, and the only increase in the liability of the guarantors on the new paper was in agreeing to pay $2,160, which was interest on this large indebtedness, and for which the banks had taken four notes of said principal debtor, the last of which matured March 9, 1898. The benefit to the plaintiff in this transaction was in the two provisions that the unguarantied paper, aggregating nearly $10,000, must be paid by Schwartz before the guarantied paper was paid by him or his guarantors, and that no security could be taken by the latter until the unguarantied paper was paid. The benefit to the guarantors was in the extended time assured to their relative, and the right of any single guarantor to limit his liability by paying the specific sum provided in the agreement, and which in no instance amounted to a third of his possible liability. There were two distinct classes of paper affected by this agreement: The guarantied notes, which represented substantially the indebtedness for which these sureties were already liable; and, second, the unguarantied notes, two of which, amounting to over $3,700, fell due within 16 days after the making of the agreement, and the last one, of $500, matured November 25th of the same year. It is apparent, therefore, that the guarantors did not expect these unguarantied notes would be paid at maturity. That expectation would be too antagonistic to the previous manner in which Schwartz had conducted his business. There was no restriction on plaintiff's power to extend these notes, and the right to pay them by the de-

fendants was not given in the agreement. The deduction is plain that these unguarantied notes were to be extended along in the hope that Schwartz would pay them in time. It accordingly was obvious that the guarantied notes would not be paid as they severally matured unless the guarantors availed themselves of their privilege to end their liability. The agreement contains indisputable evidence of this fact. It provides:

"The undersigned do further agree that said Bank of Buffalo can hold any past-due paper guarantied by the undersigned as aforesaid, without notice to them, and without impairing their liability on account of their guaranty as aforesaid."

If this meant that it should remain as past-due paper, the clause was unnecessary, for the bank did not lose its right against the sureties by mere indulgence to the debtor. This is especially true in view of the fact that its payment was to be postponed until the payment of the notes correlatively provided for in the agreement. It could not be expected by these guarantors, apparently business people, that the bank would hold this paper overdue, and be subjected to the criticism of the bank examiner, and perhaps be compelled to charge up to profit and loss notes which were collectible. It certainly was not intended they would be collected promptly as they severally matured. If there is one thing patent in this agreement, it is that time was to be given Marcus L. Schwartz to lift himself from the slough in which he had become mired. If the plaintiff had at once insisted that these notes be paid as they severally became due, such conduct would have been considered violative of the fair import of the agreement, and would have ended all probability of collecting the unguarantied notes. It is therefore a fair inference that, when these defendants consented that the bank "can hold any past-due paper guarantied by the undersigned," it referred to its continuance in the ordinary way as bankable paper. The contract of guaranty was not on the notes themselves. They were not signed by these defendants. Their liability was exclusively in the independent agreement which was turned over to the plaintiff. If the notes were renewed, they would not sign them. The provision permitting the bank to hold the past-due paper provides that it can be done "without notice" to the defendants. Without notice of what? The agreement contained the several dates of the maturity of the notes, and, as the defendants were not indorsers, notice of protest was not essential. Was this to relieve the bank from advising them that these notes were due? Was this carefully drawn document, covering a large indebtedness, containing a distinct independent provision so utterly meaningless? The obvious intention was that as these notes matured they should be carried along in the usual way; that the bank could rely upon its contract of guaranty without advising the guarantors of each renewal. These notes could not be paid until the unguarantied notes were paid, and until that event occurred the renewal of these notes did not alter an iota the relations of these parties. No security could be taken, so there could be no possible loss on that account. The test of the releasing of the surety from liability by the conduct of the creditor is whether there has been an alteration of his agree-

ment. The suretyship is governed here by the contract made at the request of the sureties, and, within a reasonable construction of that instrument, the renewal of these notes did no violence to the intent of the parties. We must read into the agreement that it was made conformably to the usages of the business to which it had a special application. We must conclude that the provision permitting the holding of this paper after maturity had some significance, and was not mere surplusage. We must bear in mind the relations of these parties, the purpose of the agreement, and all the surrounding circumstances; and, in the light of these aids, the conclusion seems to us inevitable that the renewals were within the purview of the agreement. "The reason why extension of the time of payment discharges the surety is that he would be entitled to the creditor's place by substitution. * * * But the principle on which sureties are released is not a mere shadow, without substance. It is founded upon a restriction of the rights of the sureties, by which they are supposed to be injured. Therefore, when there is a legal impossibility of injury, the principle does not apply." Daniel, Neg. Inst. (3d Ed.) § 1313. In this case the two classes of notes were interlinked, and the right of substitution could not be available to the guarantors, as already stated, until the notes which Schwartz alone was liable to pay had been extinguished. The philosophy of the rule discharging the surety by an extension of time to the principal debtor does not, therefore, exist. While injury need not follow as the result of the extension to release the surety, the possibility of injury is the foundation of the principle. The right to extend the unguarantied notes was not restricted, but, on the contrary, a fair construction of the instrument implies that such renewal or extension carried along with it the date when the payment of the guarantied paper could be made. It would be idle to permit the unguarantied paper to be renewed, and still prohibit the renewal of that which the defendants might be liable to pay. Undoubtedly an undue exercise of the right to extend the paper on which they were not liable might operate to release them as guarantors, but the short time here given cannot subject the plaintiff to criticism. By the terms of the agreement, none of the guarantied notes could be paid until "all the other notes hereinbefore described shall be paid by said Marcus L. Schwartz." This language is significant, for it includes the four notes for interest, amounting to $2,160, and which by a separate clause in the agreement were also guarantied by the defendants. The last of these notes did not mature until March 9, 1898. It therefore must have been expected when the agreement was executed that the guarantied notes could not be paid until that date. There was no renewal of any of the guarantied paper beyond that period. In any event, until that date the defendants knew they were absolutely powerless to act. Whether the guarantied notes were renewed or remained as dormant paper was not of the slightest consequence, therefore, to these guarantors; for they could take no security, and could not be subrogated to the rights of the plaintiff in any way, until the stipulated pay day was reached. There was no actual extension of the time of payment by the renewal of the guarantied

paper as long as it did not pass beyond this boundary line. The judgment should be reversed, and a new trial granted, with costs to the appellant to abide the event.

Judgment reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur, except McLENNAN, J., not voting.